IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| CHARLES ROSE, | ) | No. 30545-7-III |
| | ) | |
| Appellant, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| ANDERSON HAY AND GRAIN | ) | PUBLISHED OPINION |
| COMPANY, | ) | |
| | ) | |
| Respondent. | ) | |

BROWN, A.C.J. – Charles Rose sued his former employer, Anderson Hay and Grain Company (AHG), in Kittitas County Superior Court for his alleged wrongful discharge in violation of public policy after a similar suit was dismissed in federal court because he had failed to timely exhaust his federal administrative remedies. The state court dismissed his action, reasoning his federal administrative remedies would have been adequate to vindicate the public policy had he timely filed his administrative complaint. Mr. Rose appealed and this court affirmed. Our Supreme Court remanded the matter back to this court for reconsideration in light of that court's recent opinion in *Piel v. City of Federal Way*, 177 Wn.2d 604, 306 P.3d 879 (2013). *See Rose v. Anderson Hay and Grain Co.*, 180 Wn.2d 1001, 327 P.3d 613 (2014). On reconsideration, we again affirm the trial court.

FACTS

Mr. Rose worked as a commercial truck driver for AHG from March 2006 through November 2009. He alleges AHG terminated him for refusing to complete his shift, which he claims would have forced him to exceed the maximum allowed hours-of-service under federal regulations and would have further required him to violate federal regulations by falsifying time sheets.

On March 3, 2010, Mr. Rose sued in federal court, arguing his termination from AHG violated the Commercial Motor Vehicle Safety Act (CMVSA) (49 U.S.C. ch. 311). AHG requested dismissal based on 49 U.S.C. § 31105(b), which provides that the Secretary of Labor (secretary) has exclusive jurisdiction over initial complaints under the CMVSA. On August 6, 2010, the federal court dismissed Mr. Rose's complaint based on lack of jurisdiction. The dismissal came three months after the expiration of the time limit for filing for administrative relief. Mr. Rose did not pursue a federal appeal.

In September 2010, Mr. Rose sued in state court alleging wrongful termination in violation of public policy arising from alleged violations of 49 U.S.C. § 31105. Based partly on *Korslund v. DynCorp Tri-Cities Services*, 156 Wn.2d 168, 183, 125 P.3d 119 (2005), AHG requested summary judgment dismissal of Mr. Rose's claim, arguing he failed to satisfy the jeopardy element necessary to maintain a public policy claim. AHG further argued the CMVSA provides comprehensive remedies that serve to protect the specific public policy identified by Mr. Rose and even included punitive damages. Thus,

an adequate alternative means of promoting the public policy existed, which, as a matter of law, foreclosed Mr. Rose's public policy cause of action.

The trial court agreed and on April 18, 2011, the court granted AHG's motion for summary judgment and entered judgment dismissing Mr. Rose's complaint. The trial court partly reasoned that had Mr. Rose timely pursued his federal administrative remedies, they would have been adequate to vindicate the public policy, and concluded: "The remedies available under 49 U.S.C. § 31105(b) are adequate to protect public policy on which Mr. Rose relies as a matter of law." Clerk's Papers (CP) at 116. This court affirmed, holding "the trial court correctly dismissed Mr. Rose's claim of wrongful termination in violation of public policy in light of federal statutes protecting truck drivers who refuse to violate safety regulations." *Rose v. Anderson Hay & Grain Co.*, 168 Wn. App. 474, 478, 276 P.3d 382 (2012), *remanded*, 180 Wn.2d 1001, 327 P.3d 613 (2014). The Supreme Court remanded the matter to this court for reconsideration in light of *Piel*.

### ANALYSIS

The issue is whether the trial court erred in summarily dismissing Mr. Rose's wrongful termination in violation of public policy action. He contends he presented a viable tort claim for wrongful termination in violation of public policy because the administrative remedies are inadequate.

We review summary judgment orders de novo, performing the same inquiry as the superior court. *Hisle v. Todd Pac. Shipyards Corp.*, 151 Wn.2d 853, 860, 93 P.3d 108 (2004). The superior court properly grants summary judgment when no genuine

3

issue of material fact remains and the moving party is entitled to judgment as a matter of law. *Morin v. Harrell*, 161 Wn.2d 226, 230, 164 P.3d 495 (2007) (citing CR 56(c)).

In a summary judgment motion, the burden is on the moving party to demonstrate that summary judgment is proper. *Atherton Condo. Apartment-Owners Assoc. Bd. of Dirs. v. Blume Dev. Co.*, 115 Wn.2d 506, 516, 799 P.2d 250 (1990). We consider all the facts submitted and the reasonable inferences from them in the light most favorable to the nonmoving party. *Id.* And we resolve any doubts about the existence of a genuine issue of material fact against the party moving for summary judgment. *Id.* "Summary judgment is appropriate only if, from all the evidence, reasonable persons could reach but one conclusion." *Lilly v. Lynch*, 88 Wn. App. 306, 312, 945 P.2d 727 (1997).

To establish a common law claim of wrongful discharge in violation of public policy, the plaintiff must prove there exists a clear public policy (clarity element), discouraging the conduct in which the employee engaged would jeopardize the public policy (jeopardy element), and the policy-linked conduct caused the dismissal (causation element). *Korslund*, 156 Wn.2d at 178. At issue here is the jeopardy element. In order to establish the jeopardy element, the plaintiff must show that other means of promoting the public policy are inadequate. *Cudney v. ALSCO, Inc.*, 172 Wn.2d 524, 530, 259 P.3d 244 (2011). Protecting the public is the policy that must be promoted, not protecting the employee's individual interests. *Id.* at 538. In other words,

4

the test of whether a tort claim for wrongful termination in violation of public policy is viable is if means, other than a civil lawsuit, are inadequate to promote the public policy.

The federal CMVSA prohibits an employer from discharging an employee who refuses to operate a vehicle in violation of federal regulations or standards related to commercial vehicle safety. 49 U.S.C. § 31105(a)(1)(B). An employee alleging discharge in violation of this statute can file a complaint with the secretary no later than 180 days after the alleged violation occurred. 49 U.S.C. § 31105(b)(1). If the secretary determines that an employer violated the statute, the secretary can take affirmative action to abate the violation, reinstate the employee to the former position with the same pay and terms, and require the employer to pay compensatory damages, including back pay with interest and compensation for special damages sustained by the wrongful termination, including litigation costs, expert witness fees, and reasonable attorney fees. 49 U.S.C. § 31105(b)(3)(A). By its terms nothing in the statute preempts or diminishes any other safeguards against discrimination, demotion, discharge, suspension, threats, harassment, reprimand, retaliation, or any other manner of discrimination provided by federal or state law. 49 U.S.C. § 31105(f). The Supreme Court cases of *Korslund*, *Cudney*, and *Piel* are instructive.

The plaintiffs in *Korslund* claimed they were wrongfully terminated for reporting safety violations, mismanagement, and fraud at the Hanford Nuclear Reservation. The court held that because the federal Energy Reorganization Act (ERA), provided an administrative process for adjudicating whistleblower claims and provided for

reinstatement, back pay, and other compensatory damages, an adequate remedy existed that protected the public interest. *Korslund*, 156 Wn.2d at 182-83.

In *Cudney*, the plaintiff claimed he was discharged after reporting that his supervisor was drinking on the job and had driven a company vehicle while intoxicated. The court held the Washington Industrial Safety and Health Act (WISHA) provided a sufficient administrative remedy, and that state laws on driving while intoxicated also adequately protected the public. *Cudney*, 172 Wn.2d at 527.

But, in *Piel*, the court held the administrative remedies available through the Public Employment Relations Commission (PERC) under chapter 41.56 RCW were inadequate, on their own, to fully vindicate public policy when a public employer discharges a public employee for asserting collective bargaining rights.

Unlike *Korslund* and *Cudney*, *Piel* involved a prior case holding PERC remedies failed to fully address the broader public interests involved because it protected personal contractual rights solely. 177 Wn.2d at 616-17 (quoting *Smith v. Bates Technical Coll.*, 139 Wn.2d 793, 805, 809, 991 P.2d 1135 (2000)). And unlike *Korslund* and *Cudney*, *Piel* involved a statute declaring PERC remedies supplement others and must be liberally construed to accomplish their purpose. *Id.* at 617 (quoting RCW 41.56.905). In those circumstances, the *Piel* court recognized a private common law tort remedy as necessary to fully vindicate public policy. *Id.* The *Piel* decision analyzed a single issue, "[a]re the remedies available to a public employee under chapter 41.56 RCW adequate as a matter of law, such that the employee may not assert a tort claim

6

for wrongful discharge in violation of public policy?" 177 Wn.2d at 609. The *Piel* court found that the "limited statutory remedies under chapter 41.56 RCW do not foreclose more complete tort remedies for wrongful discharge." *Id.* at 616.

The *Piel* court specifically reasoned its decision "does not require retreat from [*Korslund* or *Cudney*]." 177 Wn.2d at 616. The *Piel* court noted that the administrative schemes at issue in *Korslund* and *Cudney* were not previously found to be inadequate to protect public policy and, unlike PERC, did not include a provision stating that the "'provisions of this chapter are intended to be additional to other remedies and shall be liberally construed.'" *Id.* at 617 (quoting RCW 41.56.905). The *Piel* court recognized that *Korslund* found the ERA to have "comprehensive remedies," including back pay, compensatory damages, and attorney and expert witness fees. *Id.* at 613 (citing *Korslund*, 156 Wn.2d at 182). The ERA also contains a provision, similar to the CMVSA, that the ERA was not intended to affect "any right otherwise available to an employee under Federal or State law"; there is no similar safeguard for common law claims. 42 U.S.C. § 5851(h). *Piel* further recognized that *Cudney* found the remedies available under WISHA to be "more comprehensive than the ERA and . . . more than adequate." *Id.* (citing *Cudney*, 172 Wn.2d at 533). Accordingly, if a statutory scheme has language and remedies analogous to those at issue in *Korslund* or *Cudney*, the scheme is distinguished from *Piel* and has comprehensive remedies to protect the public interest.

7

In contrast, this court recently affirmed a trial court's denial of a defendant's request to dismiss a wrongful termination in violation of public policy claim, finding the plaintiff's case was "'the most compelling case for protection' under a public policy tort" because Mr. Becker would be personally responsible if he committed the crime that his employer requested. *Becker v. Comty. Health Systems, Inc.*, 2014 WL 3973083 at *9 (quoting Janie F. Schulman & Nancy M. Modesitt, WHISTLEBLOWING: THE LAW OF RETALIATORY DISCHARGE ch. 5.II.A.1, at 101 (2d ed. 2004). There, the employer ordered its chief financial officer, Gregg Becker, to submit false information to the U.S. Securities and Exchange Commission of a $4 million operating loss in 2012 while Mr. Becker projected a $12 million operating loss. *Becker*, 2014 WL 3973083 at *1. He resigned. *Id.* This court held that the jeopardy element of Mr. Becker's wrongful discharge claim was satisfied because there was no other means for promoting the public policy of honesty in corporate financial reporting. *Id.* at *10.

Here, the CMVSA "undisputedly" protects the public interest of "highway safety." *Int'l Bhd. of Teamsters v. Pena*, 17 F.3d 1478, 1483 (D.C. 1994). The CMVSA further prohibits an employer from discharging an employee who refuses to operate a vehicle in violation of federal regulations or standards related to commercial vehicle safety. Further, if it is determined an employer violated the statute, the Secretary of Labor can take affirmative action to abate the violation, reinstate the employee to the former position with the same pay and terms, and require the employer to pay compensatory damages, including back pay with interest and compensation for special damages

8

sustained by the wrongful termination, including litigation costs, expert witness fees, and reasonable attorney fees. 49 U.S.C. § 31105(b)(3)(A). By its terms, nothing in the statute preempts or diminishes any other safeguards against discrimination, demotion, discharge, suspension, threats, harassment, reprimand, retaliation, or any other manner of discrimination provided by federal or state law. 49 U.S.C. § 31105(f).

Similar to the statute at issue in *Korslund*, the remedies that could have been available here under the CMVSA include reinstatement, compensatory damages, back pay with interest, litigation costs, witness fees, and attorney fees. 49 U.S.C. § 31105(b)(3)(A). The CMVSA provides for punitive damages, making its remedies more comprehensive than the ERA. 49 U.S.C. § 31105(b)(3)(C); *see Cudney*, 172 Wn.2d at 532 (WISHA remedies more comprehensive than the "guidepost" remedies of ERA and, therefore, more than adequately protect the public policy of protection of workers who report safety violations). Accordingly, the remedies available under the CMVSA more than adequately protect the public interest in commercial motor vehicle safety. Without satisfying the jeopardy element, the trial court correctly dismissed Mr. Rose's claim of wrongful termination in violation of public policy.

No. 30545-7-III
*Rose v. Anderson Hay & Grain Co.*

Affirmed.

Brown, A.C.J.

WE CONCUR:

Korsmo, J.

Lawrence-Berrey, J.

10