

FILE

IN CLERKS OFFICE
SUPREME COURT, STATE OF WASHINGTON
DATE    SEP 1 7 2015

CHIEF JUSTICE

This opinion was filed for record
at _8:00 a.m._ on _Sept. 17 2015_

Ronald R. Carpenter
Supreme Court Clerk

# IN THE SUPREME COURT OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| CHARLES ROSE, | ) | No. 90975-0 |
| Petitioner, | ) | |
| v. | ) | En Banc |
| ANDERSON HAY AND GRAIN COMPANY, | ) | |
| Respondent. | ) | Filed    SEP 1 7 2015 |

JOHNSON, J.—This case involves the jeopardy element of the tort for wrongful discharge against public policy and whether the administrative remedies available under the Surface Transportation Assistance Act of 1982 (STAA),[1] 49 U.S.C. § 31105, preclude Charles Rose from recovery under a common law tort claim. This is one of three concomitant cases[2] before us concerning the "adequacy of alternative remedies" component of the jeopardy element that some of our cases seemingly embrace. For the reasons discussed in this opinion, we hold that the

---

[1] Both the parties refer to 49 U.S.C. § 31105 as the "Commercial Motor Vehicle Safety Act." This is not entirely accurate. Although the chapter is titled "Commercial Motor Vehicle Safety," § 31105 of that chapter is part of the STAA.

[2] See Becker v. Cmty. Heath Sys., Inc., No. 90946-6 (Wash. Sept. 17, 2015), and Rickman v. Premera Blue Cross, No. 91040-5 (Wash. Sept. 17, 2015).

adequacy of alternative remedies component misapprehends the role of the common law and the purpose of this tort and must be stricken from the jeopardy analysis. We reembrace the formulation of the tort as initially articulated in *Thompson, Wilmot,* and *Gardner*,[3] and reverse the Court of Appeals.

FACTS

The complaint alleges that Anderson Hay & Grain Company terminated Rose from his position as a semi truck driver when he refused to falsify his drive-time records and drive in excess of the federally mandated drive-time limits. Rose had worked as a truck driver for over 30 years, the last 3 of which he worked as an employee for Anderson Hay. His position required him to drive loads of hay weighing 50 tons or more from Ellensburg to ports located in Western Washington. Rose operated under federal regulations that required him to drive no more than 60 hours per week. 49 C.F.R. § 395.3(b)(1).

In November 2009, Rose's supervisor allegedly directed Rose to transport a load to Seattle, which would have put Rose over the 60-hour limit. Rose informed his employer that the trip would put him over the allowable limit, but his supervisor told him to falsify his drive-time records to reflect fewer hours so that

---

[3] *Gardner v. Loomis Armored Inc.,* 128 Wn.2d 931, 913 P.2d 377 (1996); *Wilmot v. Kaiser Alum. & Chem. Corp.,* 118 Wn.2d 46, 821 P.2d 18 (1991); *Thompson v. St. Regis Paper Co.,* 102 Wn.2d 219, 685 P.2d 1081 (1984).

he could complete the trip. Concerned that he might fall asleep at the wheel, Rose refused, and Anderson Hay fired him.

In March 2010, Rose sued under the STAA in federal court but his suit was dismissed for lack of jurisdiction because he failed to first file with the secretary of labor, as required by the act. 49 U.S.C. § 31105(b)(1). By the time the suit was dismissed, the 180-day filing period for administrative remedy had already lapsed. Rose then filed a complaint in Kittitas County Superior Court, seeking remedy under the common law tort for wrongful discharge against public policy. The trial court dismissed his claim on summary judgment, holding that the existence of the federal administrative remedy under the STAA prevented Rose from establishing the jeopardy element of the tort. The Court of Appeals affirmed. *Rose v. Anderson Hay & Grain Co.*, 168 Wn. App. 474, 276 P.3d 382 (2012). This court accepted review of that decision, but remanded Rose's case to the Court of Appeals for reconsideration in light of *Piel v. City of Federal Way*, 177 Wn.2d 604, 306 P.3d 879 (2013). *Rose v. Anderson Hay & Grain Co.*, 180 Wn.2d 1001, 327 P.3d 613 (2014). Like the statute at issue in *Piel*, the STAA contains a nonpreemption clause, explicitly providing that "[n]othing in this section preempts or diminishes any other safeguards against discrimination, demotion, discharge, suspension, threats, harassment, reprimand, retaliation, or any other manner of discrimination provided by Federal or State law." 49 U.S.C. § 31105(f).

On remand, the Court of Appeals distinguished Rose's case from *Piel*, likening the facts to those presented in *Korslund v. DynCorp Tri-Cities Services, Inc.*, 156 Wn.2d 168, 125 P.3d 119 (2005), and once again affirmed the superior court's decision. *Rose v. Anderson Hay & Grain Co.*, 183 Wn. App. 785, 335 P.3d 440 (2014), *review granted*, 182 Wn.2d 1009, 343 P.3d 759 (2015).

ANALYSIS

We accepted review of three cases—*Rose*, *Becker v. Community Heath Systems, Inc.*, No. 90946-6 (Wash. Sept. 17, 2015), and *Rickman v. Premera Blue Cross*, No. 91040-5 (Wash. Sept. 17, 2015)—to determine whether the existence of other nonexclusive statutory remedies preclude plaintiffs from recovery under a tort claim for wrongful discharge against public policy. We hold that they do not: the existence of alternative statutory remedies, regardless of whether or not they are adequate, does not prevent the plaintiff from bringing a wrongful discharge claim. Reviewing the origination of the tort and its underlying purpose, we find that our wrongful discharge jurisprudence travels along two irreconcilable tracks, each of which would dictate a different result in Rose's case. The discrepancy requires us to clarify and embrace only one. We hold that the "adequacy of alternative remedies" analysis must be discarded, and we reembrace the analytical framework established in *Thompson*, *Wilmot*, and *Gardner*.

*Evolution of the Tort*

The wrongful discharge against public policy tort has undergone numerous permutations since its recognition over 30 years ago. When it was first analyzed in *Thompson*, we recognized it as an exception to the general principle that absent a definite contract, employees are terminable at-will. The purpose of the tort exception is to prevent employers from utilizing the employee at-will doctrine to subvert public policy—we said, "[T]he common law doctrine cannot be used to shield an employer's action which otherwise frustrates a clear manifestation of public policy." *Thompson*, 102 Wn.2d at 231. We recognize it as a means of encouraging both employers and employees to follow the law.

In *Thompson*, the employer allegedly terminated Thompson as divisional controller in retaliation for Thompson attempting to comply with the Foreign Corrupt Practices Act of 1977, 15 U.S.C. §§ 78dd-1 to 78dd-3, by implementing a new accounting procedure. In evaluating Thompson's claim in review of dismissal on summary judgment, we embraced a burden-shifting analysis in which the analytical focus was whether the employee could establish that the discharge clearly contravened public policy:

> The employee has the burden of proving his dismissal violates a clear mandate of public policy. Thus, to state a cause of action, the employee must plead and prove that a stated public policy, either legislatively or judicially recognized, may have been contravened. . . . [O]nce the employee has demonstrated that his discharge may

have been motivated by reasons that contravene a clear mandate of public policy, the burden shifts to the employer to prove that the dismissal was for reasons other than those alleged by the employee.

*Thompson*, 102 Wn.2d at 232-33.

We joined the growing number of jurisdictions in adopting this burden-shifting framework, which was designed to track the same burden-shifting analytical framework used for other employment discrimination claims. Particular to this tort, however, we insisted that the public policy at issue be judicially or legislatively recognized, emphasizing that the tort is a narrow exception to the at-will doctrine and must be limited only to instances involving very clear violations of public policy. *Thompson*'s requirement that the policy be judicially or legislatively recognized protects employers from having to defend against amorphous claims of public policy violations and addresses the employers' legitimate concern that a broad common law tort would considerably abridge their ability to exercise discretion in managing and terminating employees. This strict clarity requirement ensures that only clear violations of important, recognized public policies could expose employers to liability.

Following *Thompson*, the availability of the tort remained narrow and it was recognized under only four different situations:

(1) where employees are fired for refusing to commit an illegal act;
(2) where employees are fired for performing a public duty or

obligation, such as serving jury duty; (3) where employees are fired for exercising a legal right or privilege, such as filing workers' compensation claims; and (4) where employees are fired in retaliation for reporting employer misconduct, i.e., whistleblowing.

*Gardner*, 128 Wn.2d at 936 (citing *Dicomes v. State*, 113 Wn.2d 612, 618, 782 P.2d 1002 (1989)). Under each scenario, the plaintiff is required to identify the recognized public policy and demonstrate that the employer contravened that policy by terminating the employee.

Not until our decision in *Wilmot* did we factor into our analysis the existence of other statutory remedies. In that case, several at-will employees were injured on the job and were forced to continue working under threat of termination. The Industrial Insurance Act (IIA), Title 51 RCW, prohibits such coercion and provides an administrative remedy for employees who are terminated in retaliation for taking leave for work-sustained injuries. When we examined the IIA as an alternative remedy to the tort claim, we examined whether it was a mandatory and *exclusive* remedy such that it precluded the plaintiff from recovery through a wrongful discharge tort claim. We concluded that the statute contained permissive rather than mandatory language, and we held that an aggrieved employee could seek recourse under either claim. We held the availability of the alternative remedy did not preclude the claim from going forward.

In *Gardner*, we refined the tort's analytical framework somewhat but expressly refrained from substantively changing the underlying tort requirements. In that case, an armored truck driver was terminated for leaving his truck to save a woman's life, and we were presented with the question of whether the termination violated a clear mandate of public policy. We explained that because the situation did not involve the common retaliatory discharge scenario, it demanded a more refined analysis than had been conducted in previous cases. *Gardner*, 128 Wn.2d at 940. Faced with this unique set of facts, we utilized a four-part framework to guide our analysis. HENRY H. PERRITT, JR., WORKPLACE TORTS: RIGHTS AND LIABILITIES § 3.7 (1991).

Under this Perritt framework, courts examine (1) the existence of a "clear public policy" (clarity element), (2) whether "discouraging the conduct in which [the employee] engaged would jeopardize the public policy" (jeopardy element), (3) whether the "public-policy-linked conduct caused the dismissal" (causation element), and (4) whether the employer is "able to offer an overriding justification for the dismissal" (absence of justification element). *Gardner*, 128 Wn.2d at 941.

To establish jeopardy, plaintiffs must show they engaged in particular conduct and the conduct *directly relates* to the public policy or was *necessary* for the effective enforcement of the public policy. This burden requires the plaintiff to "'argue that other means for promoting the policy . . . are inadequate.'" *Gardner*,

128 Wn.2d at 945 (alteration in original) (quoting PERRITT, *supra*, § 3.14, at 77). In other words, the plaintiff must argue that the actions he or she took were the only adequate means to promote the public policy.

When we analyzed this jeopardy element in *Gardner*, we determined that it was necessary for Gardner to leave his truck to save the woman's life because no police or other persons were available to help the woman. The dissent responded that Gardner could have summoned help by using his radio or sirens, reasoning that those other alternatives would have been adequate and that Gardner's actions were unnecessary to save her life. What is important about this case is this court's treatment of the adequacy component. Clearly, at the time of *Gardner*, the focus of the adequacy analysis was whether the employee had adequate alternatives *at the time* the employee decided to violate the employer's policy; the analysis did not involve a review of other after-the-fact remedies that might be available.

In adopting this four-part Perritt analysis, we stated that we did not intend to substantively change the wrongful discharge tort. The common law already contained clarity and jeopardy elements, so we said the "adoption of this test does not change the existing common law in this state." *Gardner*, 128 Wn.2d at 941. *Gardner* was a highly unique case, and its facts justified a refined analysis. This court's decisions prior to *Gardner* remain good law and are merely supplemented by the additional guidance provided by the Perritt factors.

In *Hubbard v. Spokane County*, 146 Wn.2d 699, 50 P.3d 602 (2002), we departed from the precedent we had established by suggesting an additional requirement: the plaintiff must establish that no other statutory provision exists to adequately protect the public policy. In *Hubbard*, an employee was fired from his position with the county planning department when he raised concerns that his supervisors were improperly bending regulations to serve their own interests. We focused our jeopardy analysis on whether the statutory remedy under RCW 36.70.830—which provided for a remedy to any person aggrieved by the land zoning decision—was "adequate" to protect the public policy at issue. If so, we reasoned that public policy would not be jeopardized because the statutory remedy already protected that interest. But we ultimately decided that the alternative statutory remedy was inadequate because it provided third parties only a roundabout way of challenging these administrative decisions. We determined that availing the common law remedy to employees who report violations was a better and more efficient way of ensuring compliance with the law, and we allowed the claim to proceed.

We continued along this trajectory in *Korslund* and *Cudney*, where in each case, we focused on the availability of alternative administrative remedies available for wrongfully discharged employees, mirrored them against the remedies available under the common law, and assessed whether those alternative

remedies provided adequate protections to protect the public policy threatened by the employer's wrongful conduct. *Cudney v. ALSCO, Inc.*, 172 Wn.2d 524, 259 P.3d 244 (2011); *Korslund*, 156 Wn.2d 168. In both cases, we determined that the comprehensive nature of the remedial statutes was adequate to protect whistle blowing employees.

In *Korslund*, a Hanford employee was terminated after reporting safety violations, mismanagement, and fraud at the Hanford site. Federal law under the Energy Reorganization Act of 1974 (ERA), 42 U.S.C. § 5851, established a comprehensive and robust administrative process for adjudicating whistle blower claims. In that case, we said that because the wrongful discharge tort is a narrow exception to the at-will doctrine, we were unwilling to extend it to the wrongfully terminated employee when there were other adequate remedial means to protect the public policy.

We applied this standard again in *Cudney*, referring to it as the "strict adequacy" requirement. The claim in *Cudney* involved an employee who was terminated for reporting a managerial supervisor for driving the company car while intoxicated. We affirmed the summary judgment dismissal of Cudney's claim because the Washington Industrial Safety and Health Act of 1973 (WISHA), chapter 49.17 RCW, provided for all appropriate remedies for workers who report safety violations. We went on to explain that state driving while under the

influence laws also protected the public policy at issue and that the wrongful discharge tort was therefore not necessary to address the public policy concern. Because the purpose of the tort is to protect public policy, not the individual employee's rights, we were also unconcerned that the remedies under WISHA were not available to this particular plaintiff. It was sufficient that the administrative remedies were generally available to wrongfully discharged employees.

In *Piel*, our most recent case on this issue, we declined to extend *Korslund* and *Cudney* to cases involving alternative remedial statutes that explicitly indicate that its remedies are intended only to supplement other remedies. We said, "[W]e should not reach to expand the jeopardy analysis of *Korslund* or *Cudney* when the very statutory scheme that announces the public policy at issue also cautions that its administrative remedies are intended to be additional to other remedies." *Piel*, 177 Wn.2d at 617. We held this language to be significant because it respects the legislative choice to allow a wrongfully discharged employee to pursue additional remedies beyond those provided by statute.

As a result of these cases, our jeopardy element analysis has wavered into a stopgap analysis, subsumed by the requirement that the plaintiff establish that no other adequate statutory remedy exists to promote the policy. This approach requires a court to search existing remedial statutes line by line to determine

whether they confer adequate remedies to the employee or somehow adequately protect the public policy at issue. While we never expressly overruled any of our cases, our cases since *Gardner* have reflected a significant departure from our initial explanation of the wrongful discharge tort.

This departure has generated considerable confusion, as evidence by this case: when applied to *Rose*, our cases dictate opposing results. Under the line of cases decided prior to *Hubbard*, Rose's claim would survive summary judgment. We would have reviewed the STAA only for mandatory and exclusive language, in which case the STAA's nonpreemption clause would satisfy *Wilmot's* nonexclusivity requirement. But under *Hubbard, Korslund*, and *Cudney*, the "strict adequacy" requirement would have foreclosed Rose's tort claim because the STAA provides similarly robust and comprehensive remedies. The STAA also contains a nonpreemption clause nearly identical to the one at issue in *Korslund*. *See* 42 U.S.C. § 5851(h).[4] So under those cases, Rose would lose. However, *Piel* would dictate still a different result: since nonpreemption clauses constitute the best possible evidence that the statutory remedies are inadequate, alternative remedial statutes with nonpreemption clauses do not preclude tort claims. The

---

[4] "This section may not be construed to expand, diminish, or otherwise affect any right otherwise available to an employee under Federal or State law to redress the employee's discharge or other discriminatory action taken by the employer against the employee."

STAA contains such a clause, and under *Piel*, we would permit Rose's claim to proceed out of respect for Congress' choice to avail multiple sources of remedies for STAA violations.

And yet, despite these opposing results, none of these cases have been overruled or expressly abrogated. Rose's case has exposed serious inconsistencies in our case law, and as review of our cases has made clear, our jurisprudence travels along two divergent tracks. It is our obligation to resolve the conflict between our cases.

*Rejection of the "Adequacy of Alternative Remedies" Analysis*

In deciding whether to abandon the "strict adequacy" requirement, we apply our stare decisis doctrine: we will not abandon precedent unless it is determined to be incorrect and harmful. *In re Rights of Waters of Stranger Creek*, 77 Wn.2d 649, 653, 466 P.2d 508 (1970). But stare decisis does not compel us to follow a past decision when its rationale no longer withstands careful analysis. When the generalization underpinning a decision is unfounded, we should not continue in blind adherence to its faulty assumption. *Arizona v. Gant*, 556 U.S. 332, 351, 129 S. Ct. 1710, 173 L. Ed. 2d 485 (2009). We adopted the adequacy requirement as a means of maintaining the narrowness of the tort exception to the at-will doctrine. And while we agree here that the tort exception must remain narrow, we will not narrow it in a manner that harmfully deprives aggrieved employees of a rightful

claim, particularly when it fails to serve any legitimate employer interest. For the reasons below, we conclude that the additional "adequacy of alternative statutory remedies" component of the jeopardy prong is incorrect and harmful. We disavow the requirement that a plaintiff establish inadequacy of alternative remedies and overrule our cases to the extent they hold otherwise.

First, our "strict adequacy" requirement is premised on the faulty assumption that it further protects the breadth of our at-will doctrine. For example, Anderson Hay argues that the tort is a narrow exception, and should be construed narrowly, because the at-will doctrine reflects the policy that employers must retain discretion in making employment decisions and the threat of frivolous suits unduly burdens their ability to manage employees. They argue that this "strict adequacy" requirement necessarily limits the availability of the tort, thereby protecting employers' discretionary authority to terminate employees with or without cause.

This argument is unavailing for multiple reasons. To begin with, the "strict adequacy" requirement does not actually promote employer discretion with respect to at-will employees. Regardless of whether the tort for wrongful discharge would be available to Rose, the STAA prohibited Anderson from terminating Rose for refusing to break the law. The concurrent availability of this tort does not broaden or narrow Anderson's legal discretion to terminate Rose as an at-will employee. Additionally, by asking us to overlay our exclusivity analysis with an adequacy

15

analysis, Anderson Hay essentially asks us to embrace a stronger at-will doctrine policy protective of its illegal activities. We disagree that Anderson Hay should be allowed to contravene public policy merely because an alternative nonexclusive administrative remedy existed. The purpose of a broad at-will doctrine is to protect the employer's legitimate need to exercise discretion. Legitimate employer discretion does not include an employer's illegitimate desire to violate the law in disciplinary decisions without repercussion. If a plaintiff can surmount the difficult burden of establishing that his or her termination contravenes a clear, important mandate of public policy, then the additional strict adequacy requirement only "narrows" the tort by offering a loophole to avoid liability. No legitimate purpose exists for protecting an employer's ability to violate public policy.

Second, the analysis of alternative adequate remedies misapprehends the role of the common law. The common law is free standing, and absent clear legislative intent to modify the common law, its remedies are generally not foreclosed merely because other avenues for relief exist. Washington courts have recognized that the wrongful termination tort is independent of any underlying contractual agreement or statute and have previously held that an employee need not exhaust his or her contractual or administrative remedies. *Smith v. Bates Tech. Coll.*, 139 Wn.2d 793, 809, 991 P.2d 1135 (2000) (teacher not required to exhaust collective bargaining agreement remedies before bringing wrongful discharge in

violation of public policy claim); *Allstot v. Edwards*, 116 Wn. App. 424, 433, 65 P.3d 696 (2003) (police officer not required to pursue administrative remedy for constructive discharge claim); *Young v. Ferrellgas, LP*, 106 Wn. App. 524, 531, 21 P.3d 334 (2001) (employee not required to submit wrongful discharge and overtime violations to arbitration first). The common law may be abrogated by constitutional requirements or legislative action, but we do not view the wrongful discharge tort as self-subordinating. Common law remedies should be preempted by statutory law only where the legislature either implicitly or explicitly expresses an intent to do so. It is incorrect to overlay the exclusivity analysis with an additional adequacy analysis.

Third, the jeopardy element, as we described it in *Gardner*, does not require an analysis into the adequacy of alternative remedies. In *Gardner*, we analyzed "adequacy of alternatives" by looking at the alternatives available to the employee at the time he or she decided to violate the employer's direction; we did not address alternative remedial statutes. Moreover, the adequacy of alternatives requirement is inconsistent with the remainder of the jeopardy element. We said the plaintiff establishes jeopardy by demonstrating that his or her conduct was *either* directly related to the public policy *or* necessary for effective enforcement. The disjunctive language creates two options for establishing jeopardy, and the plaintiff satisfies the jeopardy element by either means. In the first type of case,

17

where there is a direct relationship between the employee's conduct and the public policy, the employer's discharge of the employee for engaging in that conduct inherently implicates the public policy. In the second type of case, where there is no direct relationship, then the plaintiff must establish that his or her actions were necessary for effective enforcement of the policy—in other words, the plaintiff must establish that there was no adequate alternative means of promoting the policy. If we require the plaintiff to argue inadequacy of alternative means in every case, we obviate the plaintiff's ability to establish jeopardy by establishing either disjunctive. Such a requirement renders the first disjunctive superfluous.

Finally, the adequacy component undermines the very purpose of the tort. When we adopted this tort exception to the at-will doctrine, we sought to encourage employees to follow the law by protecting them from retaliatory termination. The additional adequacy requirement strips employees of that protective guarantee. With the vast number of remedial statutes that exist to address public policies, employees are left to guess whether the law will protect their actions or whether their claim will slip through the cracks formed by this nebulous adequacy standard. In the aggregate, this doubt and uncertainty will erode employees' trust that the law will protect their lawful actions.

Though we reject this adequacy requirement, courts still must consider whether a statutory remedy is intended to be exclusive. A review of exclusivity is a

more consistent, clearer, and legislatively deferential standard. It is more consistent with our analysis of all other wrongful discharge torts, all of which embrace the same exclusivity analysis and better reflects the role of the common law in supplementing statutory principles. *Smith*, 139 Wn.2d 793; *Allstot*, 116 Wn. App. 424; *Young*, 106 Wn. App. 524. Our courts are familiar with analyzing statutes for preemptory and mandatory language, and our well-established jurisprudence would guide the application of this tort toward more consistent, predictable results. And finally, the exclusivity requirement respects the legislature's choice to either preclude or supplement the common law remedies as it deems necessary. Congress and the legislature know how to create exclusive remedies, and as the popularly responsive branch of government, they are in the best position to determine when such remedies should be restricted in favor of employers.

Our continued adherence to this adequacy requirement is both unwarranted and harmful. By requiring a comparison of the relative efficiency between the tort and the numerous statutes that may exist that address the same policy, this adequacy analysis has created confusing and inconsistent precedent. Our court has struggled with its application, and the time has come to reject the requirement outright. The adequacy component narrows the tort in an illogical, inconsistent fashion and does nothing to serve the legitimate interests of the employer. By

discarding this additional adequacy requirement, we hope to bring clarity and consistency to the adjudication of these claims.

For these reasons, we abrogate our precedent only to the extent that it has required an adequacy, rather than an exclusivity, analysis of alternative remedies. We reaffirm the approach we established in *Thompson* and *Gardner* as the appropriate analytical framework for the tort. *Wilmot* applies the proper exclusivity analysis when alternative remedial statutes address the same public policy. Because our cases since *Thompson*, *Gardner*, and *Wilmot* have embraced the same core principles, and in large part remain good law, we abrogate them only to the extent they require an analysis of the adequacy of alternative remedies.

*Application to This Case*

We review the trial court's summary judgment order de novo. Summary judgment is proper if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. CR 56(c); *Hubbard*, 146 Wn.2d at 707. We consider all the facts in the light most favorable to Rose, the nonmoving party in this case. Viewing the facts in that light, we accept Rose's allegation that Anderson Hay terminated Rose for refusing to drive in excess of the federally mandated maximum. We determine now whether that termination contravenes a clear mandate of public policy.

As we have said before, there are four scenarios that are easily resolved under the *Thompson* framework and will potentially expose the employer to liability: (1) when employees are fired for refusing to commit an illegal act, (2) when employees are fired for performing a public duty or obligation, such as serving jury duty, (3) when employees are fired for exercising a legal right or privilege, such as filing workers' compensation claims, and (4) when employees are fired in retaliation for reporting employer misconduct, i.e., whistle-blowing. *Gardner*, 128 Wn.2d at 936.

The first scenario applies squarely to the case before us: Anderson Hay allegedly terminated Rose because he refused to falsify his drive log and drive in excess of the federally mandated limit. Rose has met his burden in establishing his termination for refusing to break the law contravenes a legislatively recognized public policy. The burden now shifts to Anderson to establish that Rose's dismissal was for other reasons. We note that in other instances, when the facts do not fit neatly into one of the four above-described categories, a more refined analysis may be necessary. In those circumstances, the courts should look to the four-part Perritt framework for guidance. But that guidance is unnecessary here: Anderson allegedly terminated Rose for refusing to break the law. These facts fall directly within the realm of wrongful discharge in violation of public policy.

CONCLUSION

With respect to the STAA, we hold that its existence does not affect Rose's tort claim. Statutory alternatives will not preclude tort recovery unless such preclusion is either implied or expressed by the statute. We will not impose our own judicially created hurdle to recovery. Because Congress expressly provided a nonpreemption clause in the statute, our analysis need not go any further. We respect Congress' choice to permit Rose to pursue either remedial course of action.

Because the STAA does not prevent Rose from recovery under the tort and Rose can make out a prima facie case, his wrongful discharge against public policy claim survives summary judgment. We reverse the Court of Appeals and remand his claim for further proceedings.

_____

WE CONCUR:

_____    _____

_____    _____

_____    _____

_____    _____

No. 90975-0

FAIRHURST, J. (dissenting)—I dissent because Charles Rose does not

satisfy the jeopardy element of the tort of wrongful discharge in violation of public

policy. To reach a different result, the majority overturns precedent and creates a

new analytical framework for the tort. I would proceed according to our precedent

and affirm the Court of Appeals.

The issue in this case is whether Rose's claim of wrongful discharge in

violation of public policy should be dismissed because he cannot satisfy the jeopardy

element of the claim.[1] I would hold that the existence of an adequate alternative

statutory remedy prevents a plaintiff from bringing a wrongful discharge claim.

Here, the remedy provided in the Surface Transportation Assistance Act of 1982

(STAA), 49 U.S.C. § 31105, is adequate to effect the public policy and therefore

---

[1]We accepted review of two other cases—*Becker v. Community Health Systems, Inc.*, No. 90946-6 (Wash. Sept. 17, 2015) and *Rickman v. Premera Blue Cross*, No. 91040-5 (Wash. Sept. 17, 2015)—that involve the same issue.

1

Rose cannot satisfy the jeopardy element and his claim for wrongful discharge should be dismissed.

A.    The adequacy of the alternatives analysis is not incorrect and harmful

As the majority notes, the wrongful discharge in violation of public policy tort has undergone changes to its analytical framework since its recognition 30 years ago. *See* majority at 4-8. While the analytical framework for the tort may have changed, the purpose of the tort has remained the same since the tort's recognition. "[T]he tort of wrongful discharge is not designed to protect an employee's purely *private interest* in his or her continued employment; rather, the tort operates to vindicate the *public interest* in prohibiting employers from acting in a manner contrary to fundamental public policy." *Smith v. Bates Tech. Coll.*, 139 Wn.2d 793, 801, 991 P.2d 1135 (2000). The tort was intended to be a narrow public policy exception to the employment at will doctrine. *Thompson v. St. Regis Paper Co.*, 102 Wn.2d 219, 232, 685 P.2d 1081 (1984).   To ensure the tort remains a narrow exception, a plaintiff should be precluded from bringing a claim for wrongful discharge in violation of public policy when an adequate alternative remedy exists.

1.    *The development of the tort of wrongful discharge*

Originally, a claim for wrongful discharge in violation of public policy required the court to perform a burden shifting analysis. *Id.* The plaintiff had the

burden to prove that his or her dismissal violated a clear mandate of public policy.

*Id.* If the employee met this burden, then the employer would have to demonstrate

that the discharge was for other reasons. *Id.* at 232-33.

In *Gardner v. Loomis Armored, Inc.*, 128 Wn.2d 931, 941, 913 P.2d 377

(1996), this court adopted a four-part test for the wrongful discharge tort. After

*Gardner*, to bring a claim for wrongful discharge in violation of public policy:

> (1) The plaintiff[] must prove the existence of a clear public policy (the *clarity* element).
> (2) The plaintiff[] must prove that discouraging the conduct in which [he or she] engaged would jeopardize the public policy (the *jeopardy* element).
> (3) The plaintiff[] must prove that the public-policy-linked conduct caused the dismissal (the *causation* element).
> (4) The defendant must not be able to offer an overriding justification for the dismissal (the *absence of justification* element).

*Id.* (citations omitted). Each element must be met, and these elements are the same

regardless of what conduct prompts the claim. In adopting the four-part test,

*Gardner* did not intend to change the common law for the wrongful discharge tort.

*Id.*

At issue here is the jeopardy element. Specifically, Rose's employer,

Anderson Hay and Grain Company, asserts that Rose's claim should be dismissed

because a federal administrative remedy under the STAA prevents Rose from

establishing the jeopardy element.

2.    *The jeopardy element*

"The jeopardy element guarantees an employer's personnel management decisions will not be challenged unless a public policy is genuinely threatened." *Id.* at 941-42. To establish jeopardy, the plaintiff must show that he "engaged in particular conduct, and the conduct directly relates to the public policy, or was necessary for the effective enforcement of the public policy." *Id.* at 945 (emphasis omitted). The plaintiff also must show how the threat of discharge will discourage others from engaging in desirable conduct. *Id.* Finally, the plaintiff must demonstrate that other means of promoting the public policy are inadequate. *Id.*

The jeopardy element is more difficult to establish where the statute that declares the alleged public policy provides an administrative remedy. HENRY H. PERRITT, JR., WORKPLACE TORTS: RIGHTS AND LIABILITIES § 3.15, at 78 (1991). When the statute that declares the public policy also creates a remedy, the focus of the jeopardy analysis has centered on the adequacy of that remedy.[2] *See Korslund v. DynCorp Tri-Cities Servs., Inc.*, 156 Wn.2d 168, 182-83, 125 P.3d 119 (2005); *Cudney v. ALSCO, Inc.*, 172 Wn.2d 524, 531-33, 259 P.3d 244 (2011); *Hubbard v. Spokane County*, 146 Wn.2d 699, 717, 50 P.3d 602 (2002).

---

[2]The question of whether an adequate alternative remedy exists presents a question of law where the inquiry is limited to examining existing laws to determine if they provide an adequate alternative means of promoting the public policy. *Korslund v. DynCorp Tri-Cities Servs., Inc.*, 156 Wn.2d 168, 182, 125 P.3d 119 (2005).

4

"[T]his court has repeatedly applied [a] strict adequacy standard, holding that a tort of wrongful discharge in violation of public policy should be precluded unless the public policy is inadequately promoted through other means and thereby maintaining only a narrow exception to the underlying doctrine of at-will employment." *Cudney*, 172 Wn.2d at 530. When examining an alternative statute for adequacy, the question is not whether the legislature intended to preclude a tort claim, but whether other means of protecting the public policy are adequate such that recognition of the tort claim is not necessary to protect the public policy. *Korslund*, 156 Wn.2d at 183. Our cases have recognized that the alternative remedy does not need to be available to the particular plaintiff seeking to use the tort, so long as it provides an adequate means to protect the public policy. *Id.*; *Cudney*, 172 Wn.2d at 538.

In *Korslund* this court held that as a matter of law the plaintiffs could not satisfy the jeopardy element because the Energy Reorganization Act of 1974 (ERA), 42 U.S.C. § 5851, provided an adequate alternative means of promoting the public policy. *Korslund*, 156 Wn.2d at 181. The plaintiffs in *Korslund* claimed that they were wrongfully discharged for reporting safety violations, mismanagement, and fraud on the part of their employer, DynCorp, at the Hanford nuclear site. *Id.* at 172-73. The plaintiffs claimed that to effectuate the policy of protecting the health and

5

safety of the public in the operation of the nuclear industry, the ERA prohibits retaliation against employees that observe and report potential misconduct. *Id.* at 182. The ERA provided an administrative process for adjudicating whistle-blower complaints and required a violator to reinstate the employee to his or her former position with the same compensation, terms and conditions of employment, back pay, and compensatory damages. *Id.* The *Korslund* court found that the remedies provided in the ERA were comprehensive "to protect the specific public policy identified by the plaintiffs." *Id.* at 182.

Similarly, in *Cudney* this court found that an employee could not satisfy the jeopardy element of the wrongful discharge tort because the Washington Industrial Safety and Health Act of 1973 (WISHA), chapter 49.17 RCW, provided an adequate alternative remedy. *Cudney*, 172 Wn.2d at 526, 538. Cudney alleged that he was terminated for reporting that a manager drove a company vehicle while intoxicated. *Id.* at 526. Cudney intended to promote the policies of workplace safety, protecting employees against retaliation for reporting safety violations, and protecting the public from the dangers of drinking and driving. *Id.* at 530. The *Cudney* court compared the protections and remedies provided by WISHA to those provided by the ERA examined in *Korslund* and found that WISHA was more comprehensive than the ERA. *Id.* at 533. Under WISHA the superior court has the power to grant

all appropriate relief to the aggrieved employee. *Id.* at 533. In contrast, the ERA limited the relief to certain specific categories. *Id.* The court found that WISHA was more than adequate to protect the identified public policies and therefore held that Cudney could not satisfy the jeopardy element.[3] *Id.* at 533, 536.

*Piel v. City of Federal Way*, 177 Wn.2d 604, 614-15, 306 P.3d 879 (2013), was this court's most recent case to address the jeopardy element and the adequate alternative remedies analysis. The *Piel* court recognized that there are some cases where a wrongful discharge tort must exist alongside a statutory scheme in order to fully vindicate the public policy. *Id.* The *Piel* court addressed whether the remedies through the Public Employment Relations Commission (PERC) under chapter 41.56 RCW were adequate as a matter of law to preclude a plaintiff from asserting a claim for wrongful discharge in violation of policy. *Id.* at 609. The *Piel* court found that an employee could satisfy the jeopardy element because PERC did not provide an adequate alternative remedy. *Id.* at 617-18.

*Piel* did not overrule *Korslund* and *Cudney*, and although *Piel* reaches a different outcome than *Korslund* and *Cudney*, its reasoning is consistent. Like

---

[3]The *Cudney* court also addressed Washington's driving under the influence laws (DUI) and found that the DUI laws adequately protected the public from the perils of drunk driving. 172 Wn.2d at 536-37. The court held that Cudney could not show that reporting drunk driving to another manager was the "'*only available adequate means*'" to promote the public policy of protecting the public from drunk driving. *Id.* at 536 (quoting *Danny v. Laidlaw Transit Servs., Inc.*, 165 Wn.2d 200, 222, 193 P.3d 128 (2008)).

7

*Korslund* and *Cudney*, in *Piel* this court focused its analysis on whether the alternative statutory remedy was adequate to promote or vindicate the public policy at issue. *Id.* at 615, 617.

The statutory remedies through PERC differed from the remedies in *Korslund* and *Cudney*. *Id.* at 616-17. The *Piel* court noted that unlike the statutory remedies at issue in *Korslund* and *Cudney*, PERC remedies were previously recognized by this court as inadequate to vindicate an important public policy. *Id.* at 616. The court in *Piel* relied on a prior case where this court found that to advance public policy, the wrongful discharge tort remedy should exist apart from the PERC remedy. *Id.* at 612 (citing *Smith*, 139 Wn.2d at 805). In *Smith*, this court held that PERC's remedial scheme did not provide adequate redress for an employee when an employer violated public policy by retaliating against an employee for engaging in a protected activity. 139 Wn.2d at 805-06 (noting that PERC remedies did not allow for an award of damages for emotional distress and, therefore, only partially compensated the employee for her damages).

RCW 41.56.905 states that PERC's remedies were intended to be additional to other remedies. According to the *Piel* court, this statutory language is significant because it notes the legislative choice to allow wrongfully discharged employees to pursue other remedies in addition to those provided by the statute. *Id.* The court

8

found that language in a statute announcing that the statutory scheme is intended to be additional to other remedies is the strongest possible evidence that the statutory remedies are not adequate to vindicate the public policy. *Id.*

Following *Korslund*, *Cudney*, and *Piel*, to determine whether the plaintiff can satisfy the jeopardy element requires the examination of the alternative statutory scheme to determine if it provides a remedy that is adequate in comparison to the remedy available under a common law tort action. Part of this examination includes an analysis of the statutory language to determine whether the legislature indicated that the statute would be insufficient to adequately promote the public policy at issue.

The majority asserts that the adequacy of the alternative remedy analysis as it operates after *Piel* is inconsistent with the jeopardy element as it was described in *Gardner*. Majority at 17. The majority states that *Gardner* set forth a disjunctive test that allowed the plaintiff to establish the jeopardy element by demonstrating that his or her conduct was either directly related to the public policy or necessary for effective enforcement. *Id.* According to the majority, where the plaintiff showed that his or her action directly related to the public policy, he or she does not need to show that there are no adequate alternative remedies. Majority at 18. The majority is correct that in *Gardner* this court set forth a disjunctive test, but that was only a piece of the plaintiff's burden. The *Gardner* court also stated that to establish the jeopardy

9

element, the plaintiff must show that other means of promoting the policy are inadequate. 128 Wn.2d at 945. Therefore, it has never been sufficient for the plaintiff to demonstrate that his or her conduct directly relates to the public policy.

Since its recognition, the jeopardy element has required the plaintiff to demonstrate that alternative means are not adequate to promote the public policy. *See id.* This makes sense because when an alternative adequate statutory remedy exists, employees have the same incentive to perform the desired behavior. Whether an available statutory remedy is adequate to vindicate the public policy at issue should remain a part of the analysis for the wrongful discharge tort.

3.      *The majority's analytical framework does not advance the purpose of the tort*

According to the majority, the adequacy of the alternatives analysis misapprehends the role of the common law and the purpose of the tort. Majority at 2. The majority proposes a new framework for the tort that would eliminate the adequacy of the alternatives analysis. Under the majority's new framework, a trial court examining whether a plaintiff has a claim for the tort of wrongful discharge in violation of public policy must begin by determining whether the facts of the case fit one of the four common factual scenarios. Majority at 21. These include where an employee is fired for: (1) refusing to commit an illegal act, (2) performing a legal duty or obligation, (3) exercising a legal right or privilege, and (4) reporting

employer misconduct. Majority at 6-7 (citing *Gardner*, 128 Wn.2d at 936). If the facts of the case fit one of the four common factual scenarios, then the court must determine if the employee met his or her burden of proving that his or her dismissal violates a clear mandate of public policy. Majority at 21. If the employee can meet this burden, then the burden shifts to the employee to demonstrate that dismissal was for other reasons. *Id.* Alternatively, if the facts do not fall within one of the four recognized factual scenarios, then the court should use the four-part test set forth in *Gardner*. *Id.* Further, according to the majority's analytical framework, if a statutory alternative is relevant, it will preclude a claim for wrongful discharge in violation of public policy only if the statute provides an exclusive remedy. Majority at 22. The exclusivity of a statutory remedy can be express or implied. According to the majority, a nonpreemption clause in a federal statute demonstrates that the statute is not exclusive and should not preclude a tort claim for wrongful discharge in violation of public policy. *Id.*

The majority's new framework does not advance the purpose of the tort and confuses the application of the tort claim further. The purpose of the tort is to protect the interests of the public and to promote public policy. *Smith*, 139 Wn.2d at 801. When examining the jeopardy element where there is a statutory alternative, the question for the court should not be whether the applicable statutory alternative

11

precludes the tort but whether the statute adequately promotes the public policy such that the tort claim is not necessary. *See Korslund*, 156 Wn.2d at 183. Rejecting the adequacy analysis and focusing on the exclusivity of an alternative statute does not promote public policy. Instead, it may give a plaintiff the opportunity to recover under the tort claim and under the statutory remedy. In addition, the new framework broadens the scope of the tort beyond what was intended in *Thompson*.

B.     Rose cannot satisfy the jeopardy element

After rejecting the majority's framework, I would apply our precedent to the facts at issue here and hold that Rose fails to establish the jeopardy element. Rose alleges that he was fired for refusing to drive over the hour limitation set forth in 49 C.F.R. § 395.3(b)(1) and for refusing to misrepresent the hours he drove.

The STAA established a system under which employees may pursue remedies for discharge in violation of its provisions. The STAA prohibits an employer from discharging an employee if the employee refuses to operate a vehicle because the operation violates a regulation or standard related to commercial vehicle safety. 49 U.S.C. § 31105(a)(1)(B)(i). An employee alleging a violation of the statute can file a complaint with the secretary of labor no later than 180 days after the alleged violation occurred. 49 U.S.C. § 31105(b). If after receiving the complaint the secretary reasonably believes that a violation occurred, the secretary will include

12

with the findings a preliminary order for relief. 49 U.S.C. § 31105(b)(2)(A). The complainant and the person alleged to have committed the violation may file objections to the preliminary order or the findings and request a hearing. 49 U.S.C. § 31105(b)(2)(B). If a hearing is not requested within 30 days, then the preliminary order is final and not subject to judicial review. *Id.* If the secretary finds that a violation did occur, he or she shall order the violator to affirmatively abate the violation; reinstate the complainant to his or her former position with the same pay and privileges of employment, and pay compensatory damages, including back pay and any special damages sustained by the complainant. 49 U.S.C. § 31105(b)(3)(A)(i)-(iii). Compensatory damages include damages for emotional distress. *See Carter v. Tropicana Prods. Sales, Inc.*, No. 07-10921-RWZ, 2008 WL 190791, at *3 (D. Mass. Jan. 4, 2008) (court order). Relief may also include punitive damages. 49 U.S.C. § 31105(b)(3)(C).

The Court of Appeals found that the remedies provided by the STAA were adequate and that Rose could not satisfy the jeopardy element. *Rose v. Anderson Hay & Grain Co.*, 183 Wn. App. 785, 793, 335 P.3d 440 (2014), *review granted*, 182 Wn.2d 1009 (2015). I would agree with the Court of Appeals. The remedies provided under the STAA are comprehensive. The remedies available under the STAA are similar to those available under the ERA examined in *Korslund*. These

13

included back pay, reinstatement, and compensatory damages. *Korslund*, 156 Wn.2d at 182. Although Rose cannot receive a remedy pursuant to the STAA because he failed to timely file his complaint with the Department of Labor, the alternative statutory remedies do not need to be available to the particular employee so long as the remedies are adequate to promote the public policy. *Hubbard*, 146 Wn.2d at 717.

Courts in other jurisdictions have found that the STAA's remedies are adequate. The Oregon Supreme Court recognizes the tort of wrongful discharge and, like Washington, has found that where statutes provide an adequate remedy, the tort is not available. *Rice v. Comtek Mfg. of Or., Inc.*, 766 F. Supp. 1539, 1546 (D. Or. 1990). A federal district court applying Oregon law found that the STAA provides an adequate alternative statutory remedy, precluding plaintiffs from asserting a tort claim for wrongful discharge in violation of public policy. *Dooijes v. K&B Transp., Inc.*, No. CV04-608-MO, 2005 WL 1838962, at *1 (D. Or. Aug 2, 2005) (court order).

Next, I would find that the statute does not contain language indicating that its remedy is insufficient. Unlike PERC, the statutory scheme in *Piel*, the STAA does not contain language indicating that the legislature intended the statute to be an additional remedy. Instead, the STAA contains a nonpreemption clause. 49 U.S.C.

14

§ 31105(f).[4] The ERA—the statute examined in *Korslund*—contained similar nonpreemption language as in the STAA. 42 U.S.C. § 5851(h) ("This section may not be construed to expand, diminish, or otherwise affect any right otherwise available to an employee under Federal or State law."). The *Korslund* court found that this language did not indicate that the statutory remedy was inadequate. 156 Wn.2d at 183; *see also Piel*, 177 Wn.2d at 617. The STAA provides an adequate alternative remedy, and Rose cannot satisfy the jeopardy element.

By finding that the wrongful discharge tort is not available here, it does not give Anderson the discretion to commit acts that violate the STAA. The tort action is not available because the STAA provides sufficient remedies for an employee who is wrongfully discharged for refusing to commit an illegal act. Dismissing Rose's suit would not discourage future employees from taking similar action to Rose because employees that take similar action to Rose are afforded adequate remedies and protections under the STAA.

I would continue to examine the adequacy of alternative remedies as part of the jeopardy element for the wrongful discharge tort. Because the adequate alternative remedies analysis is not incorrect and harmful, we should not overrule

---

[4]"Nothing in this section preempts or diminishes any other safeguards against discrimination, demotion, discharge, suspension, threats, harassment, reprimand, retaliation, or any other manner of discrimination provided by Federal or State law." 49 U.S.C. § 31105(f).

our precedent. The jeopardy element is critical to the analytical framework of the wrongful discharge tort because it ensures that the tort is available only when a public policy is genuinely threatened. Here, the STAA provides an adequate alternative remedy. I would affirm the Court of Appeals.

Fairhurst, J.

Owens, J.

Madsen, C.J.