

**FILE**

IN CLERKS OFFICE
SUPREME COURT, STATE OF WASHINGTON

DATE SEP 17 2015

CHIEF JUSTICE



This opinion was filed for record
at _X:00 am_ on Sept 17, 2015

Ronald R. Carpenter
Supreme Court Clerk

# IN THE SUPREME COURT OF THE STATE OF WASHINGTON

ERICKA M. RICKMAN,

                Petitioner,

        v.

PREMERA BLUE CROSS,

                Respondent.

NO. 91040-5

EN BANC

Filed     SEP 17 2015

STEPHENS, J.—Plaintiff Erika Rickman brought this suit against her former employer, Premera Blue Cross, for wrongful discharge in violation of public policy. Rickman alleges she was terminated in retaliation for raising concerns about potential violations of the federal Health Insurance Portability and Accountability Act of 1996 (HIPAA), Pub. L. No. 104-191, 110 Stat. 1936, and its Washington counterpart, the Uniform Health Care Information Act (UHCIA), ch. 70.02 RCW. The trial court dismissed Rickman's suit on Premera's motion for summary judgment, concluding Rickman could not satisfy the jeopardy element of the tort because Premera's internal reporting system provides an adequate alternative means to promote the public policy. The Court of Appeals affirmed. *Rickman v. Premera Blue Cross*, noted at 183 Wn. App. 1015 (2014).

We granted review of this case and two others in order to resolve confusion with respect to the jeopardy element of the tort of wrongful discharge in violation of public policy. *Rickman v. Premera Blue Cross*, 182 Wn.2d 1009, 343 P.3d 759 (2015); *see also Becker v. Cmty. Health Sys., Inc.*, 182 Wn.2d 1009, 343 P.3d 759 (2015); *Rose v. Anderson Hay & Grain Co.*, 182 Wn.2d 1009, 343 P.3d 759 (2015). Consistent with our decisions in *Rose* and *Becker*, we hold that nothing in Premera's internal reporting system, nor in HIPAA or its Washington counterpart UHCIA, precludes Rickman's claim of wrongful discharge. We reverse the Court of Appeals but remand for that court to address Premera's alternate argument for upholding the trial court's order of dismissal.

## FACTS AND PROCEDURAL HISTORY

Ericka Rickman served as director of Ucentris Insured Solutions from August 2004 until her termination in November 2009. Ucentris, a subsidiary of Premera, is a general insurance agency that sells a variety of health care insurance plans and risk management products to individuals and businesses. Two distinct events transpired relevant to Rickman's termination.

### *HIPAA Concerns*

In mid-September 2009, Rickman learned about a likely merger between Pacific Benefits Trust (PBT), a large association underwritten by Premera, and Washington Grocers Trust, another association underwritten by another insurer. As a result of the potential merger, Premera would lose PBT membership. Rickman confirmed the merger with Robin Hilleary, director of Premera's small business

group. Rickman informed Hilleary that a Ucentris client asked a Ucentris "[c]aptive agent"[1] to look for non-Premera insurance in light of the merger. Clerk's Papers (CP) at 187. In response, Hilleary said Premera was putting together a strategy to retain membership and Rickman should advise Ucentris captive agents not to look elsewhere for insurance on behalf of clients. Hilleary told Rickman that Premera planned to use Ucentris captive agents to transfer the memberships of preferred groups from the merged associations into an association underwritten by Premera. *Id.*

Rickman had a "gut feeling" the proposed plan involved "risk bucketing," i.e., separating riskier policy holders from less risky holders for underwriting, which she believed might violate HIPAA laws. CP at 271-72, 187. Rickman believed the plan could disclose private policyholder information. Rickman expressed her concerns to her supervisor, Rick Grover:

> I met with Rick and I said, "Rick, I have a concern about a strategy that may be going on within Premera." I explained I didn't know the details other than it had a potential utilization of our agents to move membership[,] and it had HIPAA written all over it. I couldn't say that was illegal because I don't know actually what's going to happen, but we did not want to be a part of it.

CP at 271. Rickman suggested to Grover the plan should be reviewed by a superior to determine its legality. Grover refused, noting that "we don't always tell everything to [the supervisor]." CP at 188. Rickman told Grover this is the way she had always done her business, but he said, "Well, there's a new Sheriff in town."[2] *Id.* Later, Grover forwarded e-mails to Rickman that confirmed Premera was contemplating a

---

[1] Ucentris hires independent contractors, called "captive agents," to sell insurance products offered only by Premera and its subsidiaries.

[2] Grover had recently become Rickman's supervisor.

risk bucketing plan, which Rickman believed would violate HIPAA. Rickman reported her concerns only to Grover and did not file a complaint with Premera's compliance and ethics department.

Several days after Rickman voiced her HIPAA concerns to Grover, he abandoned the risk bucketing plan, reasoning the plan favored Ucentris over Premera's other distribution channels. Premera's underwriting department later determined the risk bucketing plan was not illegal. However, in response to Rickman's interrogatories, Premera answered, "The group quickly determined *that risk bucketing was not a lawful option* for that particular situation." CP at 67 (emphasis added).

### Conflict of Interest Concerns

Rickman's son, Taylor Vidor, had been a captive agent for Ucentris since 2005, working as an independent contractor. Before Vidor was retained, Rickman disclosed her relationship with Vidor to her former supervisor, who approved hiring Vidor. According to Rickman, her former supervisor said Rickman did not need to make further disclosures because "'[i]t's not an issue. He's a contractor.'" CP at 260. Rickman also disclosed her relationship to a former employee in human resources, but the employee never responded, and human resources has no record of the conversation. Rickman did not otherwise disclose her relationship in her annual conflict questionnaires, to her new supervisor Grover, or to the compliance and ethics department. Rickman testified that many other Premera employees have family members who work for or contract with Premera.

In 2008, Rickman approved the promotion of Vidor from a captive agent to a "[s]ubject [m]atter [e]xpert[]" (SME), at the recommendation of Ucentris managers. CP at 182-83, 261-62. Vidor received additional compensation as an SME. When another SME stepped down, Vidor assumed his workload and Rickman approved an increase in Vidor's commission from 5 to 10 percent, twice the amount some other SMEs received. Rickman did not consult with Premera or further disclose her potential conflict of interest.

On September 11, 2009, around the same time Rickman raised her HIPAA concerns, someone filed an anonymous complaint against Rickman with the compliance and ethics department, alleging a conflict of interest existed because of her son's involvement with Ucentris. The complaint highlighted that Rickman had elevated Vidor to an SME position, that Vidor had input on which captive agents received leads, and that the general feeling in the office was that befriending Vidor curried favor with Rickman.

Nancy Ferrara investigated the complaint and ultimately recommended Rickman be terminated. Ferrara concluded that Rickman's actions created the appearance of favoritism by condoning familial relationships at Premera and that Rickman did not properly disclose her relationship to compliance and ethics or human resources, especially before approving Vidor's SME promotion and increasing his commission. Ferrara also concluded Rickman exercised poor judgment and showed a lack of integrity because she was not forthcoming during the investigation. In her 2013 deposition, Ferrara later said she had no knowledge of Rickman's HIPAA

concerns during the investigation or at the time of her recommendation. Grover stated he agreed with Ferrara's recommendation, and he terminated Rickman in November 2009. There is some question, however, whether Grover and Ferrara had different reasons for Rickman's termination.[3]

### Procedural Background

In December 2010, Rickman filed suit against Premera in Snohomish County Superior Court, alleging Premera had wrongfully discharged her in violation of public policy. Premera moved for summary judgment, which the trial court granted. The court found the *clarity* element of the tort of wrongful discharge was readily established based on HIPAA and Washington's UHCIA. However, the court ruled that Rickman failed to identify a genuine issue of material fact existed as to the *jeopardy* and *absence of justification* elements of her claim. As to the jeopardy element, the court held that Rickman could not establish that other means of promoting the public policy were inadequate because Premera had a robust internal reporting system. Relying on *Dicomes v. State*, 113 Wn.2d 612, 782 P.2d 1002 (1989), the court further held that Rickman acted unreasonably by failing to apprise herself of the details of the "risk bucketing" plan to determine whether it was in fact

---

[3] Ferrara indicated she believed Rickman was discharged for poor judgment and lack of integrity, not because of a conflict of interest. CP at 115 (Ferrara testified, "[T]he fact that Ms. Rickman did not disclose her son on the conflict of interest was not the reason that she was terminated necessarily. It was really due to judgment and lack of integrity."). Grover indicated Rickman was discharged for the conflict of interest discovered during the investigation and for her lack of disclosure. CP at 83 (Grover testified, "[T]he immediacy of the termination was the conflict of interest.").

illegal, and that public policy was not in jeopardy because Premera did not implement the plan.

As to *absence of justification*, the court found that Ferrara's recommendation to terminate Rickman was made without knowledge of Rickman's HIPAA concern. Therefore, the court reasoned Rickman failed to show a genuine issue of fact existed as to whether she was fired for raising HIPAA concerns. Rickman appealed.

The Court of Appeals affirmed. *Rickman*, noted at 183 Wn. App. 1015, slip op. at 15. The court reasoned Rickman failed to satisfy the jeopardy element for two reasons. First, the court held that Premera's internal reporting "system provided an available adequate alternative means by which Rickman could have reported her concerns." *Rickman*, slip op. at 15. Relying on *Cudney v. ALSCO, Inc.*, 172 Wn.2d 524, 259 P.3d 244 (2011), the court said the *jeopardy* element is unconcerned with whether Premera's internal reporting system provided Rickman any remedy for termination postreporting. *Id.* at 14. Second, the court held Rickman could not establish that her alleged whistle-blowing activity was protected because she failed to report her concerns in a reasonable manner, not having confirmed the facts or illegality of the plan. The court did not address *causation* or *absence of justification*. Rickman petitioned to this court for review, which we granted. *Rickman*, 182 Wn.2d 1009.

## ANALYSIS

Our decisions in the companion cases of *Rose* and *Becker* recognize that the strict adequacy analysis this court has sometimes embraced is inconsistent with the

history and purpose of the tort of wrongful discharge. *Rose v. Anderson & Grain Co.*, No. 90975-0, slip op. at 20 (Wash. Sept. 17, 2015); *Becker v. Cmty. Health Sys., Inc.*, No. 90946-6, slip op. at 5 (Wash. Sept. 17, 2015); *see, e.g., Thompson v. St. Regis Paper Co.*, 102 Wn.2d 219, 232, 685 P.2d 1081 (1984). Those decisions announce a return to *Thompson*, in which we adopted the public policy tort in recognition that the at-will doctrine gives employers potentially "unfettered control of the workplace and, thus, allows the employer to take unfair advantage of its employees." *Thompson*, 102 Wn.2d at 226. *Thompson* observed that allowing an exception to the at-will doctrine serves to equalize the imbalance of power that exists in an employment relationship. *Id.* Our adoption of the common law tort thus signified that the at-will doctrine can no longer "be used to shield an employer's action which otherwise frustrates a clear manifestation of public policy." *Id.* at 231.

*Thompson* characterized the public policy tort as "narrow," meaning the employee has the burden of proving the dismissal violates a clear mandate of public policy. *Id.* at 232. This means "a court may not sua sponte manufacture public policy but rather must rely on that public policy previously manifested in the constitution, a statute, or a prior court decision." *Roberts v. Dudley*, 140 Wn.2d 58, 65, 993 P.2d 901 (2000); *see also Thompson*, 102 Wn.2d at 232 (noting we determine the public policy from "'the letter or purpose of a constitutional, statutory, or regulatory provision or scheme'" or "'[p]rior judicial decisions'" (quoting *Parnar v. Americana Hotels, Inc.*, 65 Haw. 370, 652 P.2d 625, 631 (1982))).

In the years immediately following *Thompson*, the tort of wrongful discharge became the subject of an academic treatise by Professor Henry Perritt. *See* HENRY H. PERRITT, JR., WORKPLACE TORTS: RIGHTS AND LIABILITIES § 3.14, at 75-76 (1991). In *Gardner*, we looked to Professor Perritt's treatise to embrace "a more refined" analysis, in light of the unusual facts of that case. *Gardner v. Loomis Armored, Inc.*, 128 Wn.2d 931, 940, 913 P.2d 377 (1996). The Perritt test segments its analysis into four parts: (1) "the existence of a clear public policy (the *clarity* element)," (2) "that discouraging the conduct in which the [plaintiff] engaged would jeopardize the public policy (the *jeopardy* element)," (3) "that the public-policy-linked conduct caused the dismissal (the *causation* element)," and (4) that "[t]he defendant [has not] offer[ed] an overriding justification for the dismissal [of the plaintiff] (the *absence of justification* element)." *Id.* at 941.

*Gardner* recognized a plaintiff may prove "jeopardy" either because his or her conduct *directly relates* to the public policy *or* because it was *necessary* for the effective enforcement of that policy. *Id.* at 945; *see also Korslund v. DynCorp Tri-Cities Servs., Inc.*, 156 Wn.2d 168, 193-95, 125 P.3d 119 (2005) (Chambers, J., dissenting) (describing *Gardner*); *Cudney*, 172 Wn.2d at 540 (Stephens, J., dissenting in part) (same). In *Rose* and *Becker*, we clarified that the jeopardy analysis appropriately considers whether available alternative remedies are intended to be exclusive but does not require an employee to prove that bringing a tort claim is strictly necessary to vindicate public policy. *Rose*, slip op. at 14-15, 19-20; *Becker*, slip op. at 5; *see also Wilmot v. Kaiser Alum. & Chem. Corp.*, 118

Wn.2d 46, 53-66, 821 P.2d 18 (1981) (analysis focuses on whether the alternate adequate enforcement mechanism is mandatory or exclusive); *Hubbard v. Spokane County*, 146 Wn.2d 699, 717, 50 P.3d 602 (2002) (finding zoning code inadequate remedy due to its short statute of limitations); *Smith v. Bates Tech. Coll.*, 139 Wn.2d 793, 811, 991 P.2d 1135 (2000) (finding Public Employment Relations Commission inadequate to vindicate public policy).

The courts below dismissed Rickman's tort claim based on the strict adequacy standard of proof we abandoned in *Rose* and *Becker*. We must now consider whether her claim survives under the more traditional analysis of *Thompson* and *Gardner*.

### *Rickman Establishes Genuine Issues of Material Fact as to Jeopardy*

"We review de novo a trial court's decision to grant summary judgment." *Lakey v. Puget Sound Energy, Inc.*, 176 Wn.2d 909, 922, 296 P.3d 860 (2013). We affirm an order of summary judgment only when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. *See* CR 56(c); *Qwest Corp. v. City of Bellevue*, 161 Wn.2d 353, 358, 166 P.3d 667 (2007). We review the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor. CR 56(c); *Qwest Corp.*, 161 Wn.2d at 358.

As noted, a plaintiff establishes the jeopardy prong by demonstrating either of the following: "his or her conduct was . . . [(1)] directly related to the public policy *or* [(2)] necessary for effective enforcement." *Rose*, slip op. at 17. Premera

asks us to treat its internal code of conduct (Code) the same way we treat statutes for purposes of the jeopardy analysis. Premera argues the Code's internal reporting system provides an adequate alternate means to enforce public policy. We reject Premera's position.

Premera has not presented, nor could we locate, any authority for the proposition that a private employer's workplace policy should be accorded equal status to a duly enacted statute. There are obvious differences between internal self-regulations and a statutorily mandated system for addressing public policy violations. We reject Premera's argument that its internal reporting system should be the sole avenue to address violations of public policy in its workplace.

We also reject Premera's argument that HIPAA and Washington's UHCIA adequately protect public policy. First, Premera does not argue that any available remedies under the statutes are exclusive. *See Rose*, slip op. at 20-21; *Becker*, slip op. at 5. Second, Rickman claims she helped prevent an illegal risk-bucketing scheme, not that one occurred in violation of federal and state law. It is not clear that HIPAA or Washington's UHCIA contemplate remedies where a discharged employee thwarts an unlawful act. A complaint may be filed with the secretary of the United States Department of Health & Human Services Office for Civil Rights when a person believes a covered business is "not complying" with HIPAA. 45 C.F.R. § 160.306(a); *see also id.* at (b)(2) (complaint must "describe the acts or omissions believe to be in violation"). Similarly, Washington's UHCIA provides

enforcement and remedies when a health care provider "has not complied" with the law. RCW 70.02.170(1).

In addition to considering the adequacy of alternate means available to enforce public policy, the trial court found Rickman could not meet the jeopardy prong because she did not show her actions were reasonable. The trial court relied on language in *Dicomes* that predates *Gardner*. Premera argues this *Dicomes*-based analysis is a "threshold assessment" for the tort of wrongful discharge. Suppl. Br. of Resp't at 7-8. We disagree. *Dicomes* does not provide a litmus test for a claim of wrongful discharge. We have never adopted as an element of the four-part Perritt test, or of wrongful discharge generally, a requirement that the plaintiff confirm the validity of his or her concerns before taking action.

Instead, the reasonableness of the plaintiff's conduct relates to whether the plaintiff's conduct furthers public policy goals. *See Gardner*, 128 Wn.2d at 945 (finding employees must show "they engaged in particular conduct," which "*directly relates* to the public policy"); *Thompson*, 102 Wn.2d at 232 (finding the employee must demonstrate the dismissal violates a clear mandate of public policy). This inquiry may be satisfied by showing "the employee sought to further the public good, and not merely private or proprietary interests." *Dicomes*, 113 Wn.2d at 620; *compare Bennett v. Hardy*, 113 Wn.2d 912, 924-25, 784 P.2d 1258 (1990) (allowing a claim when the employee hired an attorney to protect herself from discrimination, an act for which she was later fired), *with Farnam v. CRISTA Ministries*, 116 Wn.2d 659, 672, 807 P.2d 830 (1991) (finding the employee did not

seek to further the public good because she knew the employer's conduct did not violate the law).

Rickman has presented sufficient evidence to find she acted in furtherance of public policy. She believed Premera's risk-bucketing plan would disclose the private information of policyholders, violating a clear mandate of public policy under HIPAA. Following Premera's workplace rules, Rickman reported her concern to her supervisor, Grover. CP at 271, 314 (Premera's Code expects associates to report suspected violations of any applicable laws to their supervisors.). Her supervisor told her to disregard her concerns. Viewing the facts of this case in the light most favorable to Rickman, she did not act unreasonably or raise the concerns to benefit her private or proprietary interests. We reverse the Court of Appeals decision insofar as it affirmed dismissal of Rickman's public policy tort for failing to establish the jeopardy element.

The Court of Appeals did not address the trial court's separate reason for granting summary judgment. The trial court agreed with Premera that Rickman failed to meet her burden of production on the absence of justification element of her claim. Premera argues there is no genuine issue of material fact that Rickman's discharge was the result of her conflict of interest or poor judgment involving her son's position. This argument seems to blend the separate issues of causation and overriding justification, as it focuses on whether Rickman's HIPAA concerns were the real reason for her termination.

We recognize that causation in a wrongful discharge claim is not an all or nothing proposition. The employee "need not attempt to prove the employer's sole motivation was retaliation." *Wilmot*, 118 Wn.2d at 70. Instead, the employee must produce evidence that the actions in furtherance of public policy were "*a cause of the firing, and [the employee] may do so by circumstantial evidence.*" *Id.* This test asks whether the employee's conduct in furthering a public policy was a "'substantial'" factor motivating the employer to discharge the employee. *Id.* at 71.

The "absence of justification" element examines whether the employer can "offer an overriding justification for the [discharge]," *Gardner*, 128 Wn.2d at 941 (emphasis omitted), "despite the employee's public-policy-linked conduct," *id.* at 947. Once a plaintiff presents a prima facia case of wrongful discharge in violation of public policy, the burden of proof shifts to the employer to show the termination was justified by an overriding consideration. *See id.* at 947-50; *see also Wilmot*, 118 Wn.2d at 70 (The employer must "articulate a legitimate nonpretextual nonretaliatory reason for the discharge."); *accord Hubbard*, 146 Wn.2d at 718.

The Court of Appeals did not address this argument, having dismissed Rickman's claim based on its jeopardy analysis. We therefore remand to the Court of Appeals to consider this alternate ground for the trial court's order of dismissal.

## CONCLUSION

We reverse the Court of Appeals. Consistent with our analysis in *Rose* and *Becker*, the jeopardy element of the tort of wrongful discharge does not require a

showing of "strict adequacy." Rickman presented sufficient evidence to create a genuine issue of material fact on the prima facia elements of her claim. We remand for the Court of Appeals to address whether the trial court's order of summary judgment should be affirmed on the alternate ground that Premera met its burden of proof that it had an "overriding justification" for Rickman's discharge.

Stephens, J.

WE CONCUR:

_____

Madsen, J.,

González, J.

Gordon McCloud, J.

Yu, J.

No. 91040-5

FAIRHURST, J. (concurring)—I agree with the majority that we should reverse the Court of Appeals and remand for that court to address Premera Blue Cross' alternate arguments. I write separately because, as explained thoroughly in my dissent in *Rose v. Anderson Hay & Grain Co.*, No. 90975-0 (Wash. Sept. 17, 2015), I would not abandon the adequacy of alternative remedies analysis. This analysis is consistent with this court's precedent and critical to maintaining the narrow scope of the tort of wrongful discharge. *See Thompson v. St. Regis Paper Co.*, 102 Wn.2d 219, 232, 685 P.2d 1081 (1984). Nonetheless, I agree with the majority that Ericka Rickman established the jeopardy element.

In the dissents to *Rose* and *Becker v. Community Health Services, Inc.*, No. 90946-6 (Wash. Sept. 17, 2015), I express why I believe this court should continue to examine claims for wrongful discharge in violation of public policy under the analytical framework established in *Gardner v. Loomis Armored, Inc.*, 128 Wn.2d 931, 941, 913 P.2d 377 (1996). As I did in *Becker*, I would analyze Rickman's claim

1

according to this court's analytical framework pre-*Rose*, which includes the adequacy of alternative remedies analysis.

Prior to *Rose*, to bring a claim for wrongful discharge in violation of public policy the plaintiff was required to prove (1) the existence of clear public policy (the clarity element), (2) that discouraging the conduct in which he or she engaged would jeopardize the public policy (the jeopardy element), and (3) that the public-policy-linked conduct caused the dismissal (the causation element). *Id.* at 941. The employer must not be able to offer an overriding justification for the dismissal (the absence of justification element). *Id.* The only element at issue here is the jeopardy element.

The jeopardy element ensures that an employer's management decisions will not be challenged unless a public policy is genuinely threatened. *Id.* at 941-42. To establish jeopardy, a plaintiff must show that he or she "engaged in particular conduct, and the conduct directly relates to the public policy, or was necessary for the effective enforcement of the public policy." *Id.* at 945 (emphasis omitted). The plaintiff must also show that other means of promoting the public policy are inadequate. *Id.* In addition, a plaintiff must show that the threat of discharge from his or her current position will discourage others from engaging in desirable conduct. *Id.*

2

Here, the clear policy at issue, declared by the Health Insurance Portability and Accountability Act of 1996 (HIPAA), 42 U.S.C. § 1320d(6), and Uniform Health Care Information Act (UHCIA), chapter 70.02 RCW, is to protect patient privacy.[1] *See* Clerk's Papers at 10 (trial court finding that Rickman met the clarity element). Rickman's conduct was in furtherance of this public policy. *See* majority at 13. In addition, the threat of Rickman's discharge could discourage other employees from reporting similar concerns to their supervisors out of fear that they would also be discharged. The only remaining issue in the jeopardy element analysis is whether there is an adequate alternative means to promote the public policy.

Before *Rose*, if the statute declaring the public policy also provided an adequate statutory remedy, a plaintiff could not satisfy the jeopardy element and was precluded from bringing a claim for wrongful discharge. *See Korslund v. DynCorp Tri-Cities Servs., Inc.*, 156 Wn.2d 168, 182-83, 125 P.3d 119 (2005); *Cudney v. ALSCO, Inc.*, 172 Wn.2d 524, 531-33, 259 P.3d 244 (2011). This was true even if the statutory remedy was not exclusive. *Korslund*, 156 Wn.2d at 182-83. If the public policy was already protected under a statutory scheme, then there was no reason to recognize a tort cause of action for the employee.

---

[1] The Court of Appeals did not address the remedies provided by HIPAA or the UHCIA to determine if they were adequate. *Rickman v. Premera Blue Cross*, noted at 183 Wn. App. 1015, 2014 WL 4347625, at *7. The Court of Appeals found that the internal reporting system provided by Premera was adequate to protect the alleged public policy. 2014 WL 4347625, at *6.

A statutory or administrative remedy was adequate if it provided comprehensive remedies. *See id.* A statutory remedy was comprehensive if it provided damages similar to those available in a tort action and provided a process through which an employee could hold the employer liable. *Id.* If the remedies appeared comprehensive, this court examined the statutory language to determine if the legislature indicated that the statutory remedy, on its own, was not sufficient to vindicate the public policy. *See Piel v. City of Federal Way*, 177 Wn.2d 604, 617, 306 P.3d 879 (2013).[2]

For example, in *Korslund* we found that an administrative remedy in the Energy Reorganization Act of 1974 (ERA), 42 U.S.C. § 5851, adequately protected the public policy, such that the plaintiffs were precluded from asserting a claim for wrongful discharge. 156 Wn.2d at 181-83. The ERA provided an administrative process for adjudicating whistle-blower complaints and required a violator to reinstate the employee to his or her former position with the same compensation, terms and conditions of employment, back pay, and compensatory damages. *Id.*

While HIPAA provides an administrative scheme for the office of civil rights to receive and investigate complaints, it does not provide adequate remedies for an

---

[2]In *Piel* this court found that statutory language stating that the statutory remedy was intended to be in addition to other remedies indicated that the statutory remedy was insufficient to vindicate public policy. 177 Wn.2d at 617. The *Piel* court, therefore, held that the plaintiff could establish the jeopardy element. *Id.*

4

employee that is wrongfully discharged for reporting violations. 45 C.F.R. § 160.306(a). HIPAA's implementing regulations provide that a covered entity or business may not take retaliatory action against an individual or person for reporting violations. 45 C.F.R. §§ 160.316(a), 160.530(g). However, unlike the ERA examined in *Korslund*, HIPAA does not provide compensatory damages, reinstatement, or back pay to an employee who was wrongfully discharged. Moreover, HIPAA does not create a private cause of action against an employer. *See Watts v. Lyon County Ambulance Serv.*, No. 5:12-CV-00060-TBR, 2013 WL 557274, at *10 (W.D. Ky. Feb. 12, 2013) (court order); *Dean v. Liberation Programs, Inc.*, No. FSTCV136018607S, 2013 WL 6510890, at *8 (Conn. Super. Ct. Nov. 13, 2013) (unpublished).

The available state statutory remedy—the UHCIA—is also inadequate. The UHCIA provides a private right of action against a health care provider that does not comply with its terms. RCW 70.02.170(1). However, the statute does not provide a remedy to an employee who is discharged for reporting violations. Because both the UHCIA and HIPAA do not provide comprehensive remedies, they do not provide an adequate alternative means for promoting the public policy.

Premera asserts that its internal reporting policy is an adequate alternative remedy to preclude Rickman's tort. This court has never addressed whether an

internal company policy is an adequate alternative remedy. I agree with the majority that an internal reporting policy has many differences from a statutorily mandated system for addressing a public policy. Most notably, an internal reporting policy does not provide the employee with a legally enforceable remedy. Because HIPAA, UHCIA, and Premera's internal policy do not provide an adequate alternative remedy, Rickman established the jeopardy element.

*The majority's analysis does not follow the analytical framework established in* Rose

The majority asserts that like in *Rose* and *Becker*, it decides the issue here under a "traditional analysis of *Thompson* and *Gardner*." Majority at 10. While the majority does use the four-part test established in *Gardner*, it does not follow the burden shifting framework established in *Rose*. The inconsistency in the analysis between *Rose, Becker*, and the present case will create increased confusion.

Under *Rose*, the first step in the analysis is to determine if Rickman's action falls into one of the four scenarios easily resolved under *Thompson*. *Rose*, majority at 21. If not, the court should use the four-part analysis set forth in *Gardner*. *Id*. Because Rickman alleges that she was fired for reporting employer misconduct, or whistle-blowing activities, her conduct fits into a *Thompson* category. Therefore, under *Rose*, the next step is to determine whether Rickman established her burden of showing that she was terminated for whistle-blowing activities. *See id*. at 22. If

Rickman met this burden, then the burden should shift to Premera to demonstrate that Rickman's discharge was for other reasons.[3] Instead of following this framework, the majority skipped the first step and decided the case under the four-part framework established in *Gardner*. According to this court in *Rose* and *Becker*, the majority should not have undergone such a refined analysis. *See id.* at 22; *Becker*, slip op. at 6-7.

I note the inconsistency in the analysis between *Rose*, *Becker*, and this case because it demonstrates the confusion regarding the analytical framework established in *Rose*. I believe this court would achieve a more consistent analysis and result by following our precedent pre-*Rose*. Nevertheless, I concur with the majority's holding to reverse the Court of Appeals insofar as it held that Rickman could not establish the jeopardy element.

---

[3]Because questions of fact remain about Premera's justification for discharging Rickman, the outcome—reversing and remanding the case to the Court of Appeals—likely would have been the same.

Fairhurst, J.

Owens, J.

Madsen, C.J.

*Rickman v. Premera Blue Cross*, No. 91040-5
Fairhurst, J. (concurring)