# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| MICHELLE ZACHRY, DVM, an Individual, ) ) ) | No. 76459-4-I |
| Appellant, ) ) | DIVISION ONE |
| v. ) ) | UNPUBLISHED OPINION |
| PIMA MEDICAL INSTITUTE, an ) Arizona for-profit educational institution; ) and MARISA DOBIASH, an individual ) residing in Washington, ) ) | |
| Respondents. ) | FILED: September 4, 2018 |

TRICKEY, J. — Michelle Zachry appeals the trial court's granting of summary judgment dismissing her claim of wrongful termination in violation of public policy against PIMA Medical Institute and Marisa Dobiash (collectively, PIMA). Because PIMA has established an overriding justification for Zachry's termination, and Zachry fails to demonstrate that the justification was a pretext, we affirm.

## FACTS

PIMA Medical Institute is a medical career college that offers a veterinary technician program. Marisa Dobiash is the Program Director for PIMA's veterinary technician program. Nicole Brentin is a veterinary technician who is PIMA's head instructor for the veterinary technician program. John Hanson is PIMA's Regional Director of Operations. Robert Panerio is a Campus Director of PIMA. Margaret Gerber is PIMA's Faculty Coordinator.

In March 2013, PIMA hired Zachry as the Clinical Director of its veterinary technician program. As Clinical Director, Zachry placed students into clinical externships and postgraduation employment. Her duties also included ordering supplies, teaching, and ensuring that PIMA complied with applicable laws and regulations. In addition, Zachry was PIMA's Drug Enforcement Administration (DEA) registrant. She was required to maintain a drug logbook to track and record the shipment and use of controlled substances.

During Zachry's employment at PIMA, there was friction between her and Brentin. For example, in April 2015, following a disagreement about ordering dosimeter badges,[1] Zachry told Brentin in an e-mail, "Keep you [sic] tone professional and we will get along just fine."[2]

In May 2015, Zachry asked Dobiash if Dobiash could take over several of Zachry's duties, including teaching classes, writing an annual letter, providing feedback to externship sites, and completing employer verifications and surveys. Around this time, Dobiash noticed that Zachry was not performing several of her other duties satisfactorily, including ordering dosimeter badges for students and posting quarterly dosimeter reports in classrooms.

In August 2015, Hanson was concerned about Zachry's failure to place students into externships and maintain PIMA's graduate employment database. Dobiash discovered that Zachry had not completed the employer verifications,

---

[1] Dosimeter badges monitor the wearers' exposure to radiation. OFFICE OF HOMELAND SECURITY & EMERGENCY COORDINATION RADIATION SAFETY DIVISION, DOSIMETRY, https://www.dm.usda.gov/ohsec/rsd/dosimetry.htm (last visited Aug. 6, 2018).

[2] Clerk's Papers (CP) at 35. Zachry later stated that she repeatedly complained about Brentin's behavior to Dobiash. But Zachry could not recall specific instances of doing so, and her complaints were not documented.

which other PIMA employees then had to complete. In an e-mail exchange, Zachry acknowledged that she had stopped doing employer surveys and verifications.

Zachry's work performance continued to decline. For example, Zachry failed to place students in externships in a timely manner and did not complete initial site evaluations. Zachry also spent significant time in Gerber's and Panerio's offices instead of completing her duties. On August 20, Brentin observed Zachry divide Tramadol[3] pills into new vials without properly labelling them.[4] When the pills had to be consolidated later, Zachry was unable to provide the pills' expiration date or lot number.

In September 2015, Zachry complained to a PIMA administrator that Dobiash had refused to teach PIMA's students a federally mandated education program about the United States Constitution. PIMA had previously sent an e-mail to its staff stating that PIMA was required to observe Constitution Day on September 17, 2015, and provided several examples of activities that satisfied the education program requirement. PIMA had denied Zachry's request to teach the education program about the Constitution.

On September 14, 2015, Zachry entered Brentin's classroom to collect several bags of hazardous waste. She found that the bags were wet.[5] Zachry was

---

[3] Tramadol is a medication given for pain.
[4] Zachry divided the remainder of a 1,000-count bottle of Tramadol pills into containers of 42 pills, which she labeled with "'Tramadol 50 mg'" written on bandage tape. CP at 115-16.
[5] Brentin declared that she had bagged the hazardous waste in accordance with PIMA's protocols and that bags of hazardous waste may occasionally leak despite careful packaging.

3

visibly angry, and refused to pick up the bags for disposal.[6] Later that day, Zachry e-mailed Brentin and Dobiash proposing new procedures for packaging hazardous waste for disposal.

On September 16, Zachry sent several e-mails to Brentin and Dobiash regarding the hazardous waste disposal incident. In a separate e-mail to Dobiash and Panerio, Zachry disparaged Brentin's job performance stating, "Tell [Brentin] to suck it up buttercup, and do her job properly. No, I am done jumping through her hoops. All of them. She will now abide by my rules or she won't get her stuff done. End of story."[7] She also e-mailed Dobiash, Brentin, and Panerio, telling them to place supply orders two weeks in advance to reduce Zachry's workload.[8] Finally, Zachry sent an e-mail to Brentin about whether a formalin solution would eat through various plastics, concluding with "[o]ne of my biggest peeves is when people speak about things they don't know as if they do."[9] When Dobiash told Zachry that Zachry and Brentin needed to discuss these issues in person, Zachry replied, "You and I have already talked it out enough, and things are not getting better. Just newer and different idiocies."[10]

On September 17, 2015, Zachry met with Dobiash and Gerber to talk about Zachry's job performance and her apparent hostility towards Brentin. Dobiash

---

[6] Brentin declared that Zachry "was stomping around, slamming the bins, grumbling, and complaining about how the waste was packaged" while Brentin was teaching. CP at 115.
[7] CP at 11-12.
[8] Specifically, Zachry stated that advance notice of supply orders would reduce her "hoop jumping." CP at 52. Zachry also stated that "your emergency is not mine," assumedly in reference to any problems that could arise from her proposed ordering schedule. CP at 52.
[9] CP at 130.
[10] CP at 54.

4

agreed to take over ordering supplies and completing the hazardous waste disposal so Zachry would have more time to perform her other duties.

Zachry also brought up several issues she had with Brentin, and the parties agreed on solutions for each issue. Zachry said she was feeling overwhelmed and could not complete her work unless Brentin changed her behavior. But Zachry refused to meet with Brentin. Later that day, Dobiash and Gerber met with Brentin to relay Zachry's concerns. Brentin said that she would follow the agreed solutions.

On September 20, Dobiash made a note to herself about placing Zachry on a Performance Improvement Plan (PIP) based on Zachry's difficulties with completing her duties. Dobiash listed the areas of targeted improvement as externship placement, site visits and evaluations, and communication.

On September 24, Dobiash and Gerber met with Zachry. At the end of the meeting, Zachry mentioned that she had personal issues with depression and controlling her anger, and said that she would see a doctor about the medications she was taking. Zachry apologized for previously saying that Dobiash was not supportive and was not doing her job.

On October 9, 2015, Zachry went to Panerio's office and said that she was having mental health issues. She then proceeded to say that she was taking medication and going through menopause, that her brother was dying, and that "selling and buying houses has made [her] a flake and crazy."[11] She also criticized

---

[11] CP at 79.

Dobiash, Brentin, and other instructors. Panerio observed that Zachry looked "mentally ill, dirty, and visibly angry."[12]

On October 12, Zachry e-mailed Dobiash saying, "Also, I advise you to not make too many hasty changes to things until after the [upcoming October 16] meeting with [Panerio]. All I did was give [Brentin] the rope."[13] Dobiash and others did not understand what Zachry meant by "rope."[14]

On October 16, Dobiash, Panerio, and Gerber met with Zachry to inform her that she was being placed on a PIP. During the meeting, the parties discussed Zachry's behavioral problems and substandard job performance. Zachry stated that she felt overwhelmed by her job, and asked to be relieved of her attending veterinarian duties so she did not have to work with Brentin.[15]

Zachry also said that she had observed several illegal activities at PIMA, including violations of the Occupational Safety and Health Act of 1970 (OSHA).[16] Gerber stated that she had not received any complaints about OSHA violations. Dobiash thanked Zachry for bringing it up and said it was Dobiash's responsibility to look into the matter.

Zachry then said that she had retained a lawyer and that "you'll have to fire me."[17] She pulled a cell phone out of her shirt and said that she was recording the

---

[12] CP at 79.
[13] CP at 75.
[14] CP at 75.
[15] Zachry later asked to continue with her attending veterinarian duties.
[16] 29 U.S.C. §§ 651-678.
[17] CP at 81. Zachry later denied that she had said that PIMA would have to fire her, and claimed that she had told Panerio that she would not resign.

meeting.[18] Zachry acknowledged that recording the meeting without the others' permission was unethical.[19] After Panerio noted that the recording would not be admissible in court, Zachry said, "'This is hilarious, so funny.'"[20] Panerio responded that it was "'actually terribly sad.'"[21] Panerio, Gerber, and Dobiash adjourned the meeting. After the meeting, Dobiash and Gerber began drafting the PIP.[22]

On October 19, 2015, Zachry e-mailed Hanson and two other PIMA officials about alleged illegal and unprofessional activities at PIMA. Her concerns included Brentin refusing to administer medications Zachry ordered, Brentin illegally prescribing medication without authorization, OSHA violations, and students not matriculating into PIMA's veterinary technician program out of fear of Brentin.[23] Zachry included her own notes from various meetings and classes, which included that she discussed possible OSHA violations with Panerio at their meeting on October 9.[24]

---

[18] Dobiash, Panerio, and Gerber asked Zachry if she was recording the meeting, and Zachry responded, "'yes.'" CP at 81.

[19] When Gerber said, "'that's illegal,'" Zachry responded, "'no, but unethical.'" CP at 81.

[20] CP at 81.

[21] CP at 81.

[22] Zachry also mentioned to Dobiash after the meeting that "5 mls" of Buprenex was missing but that she did not "believe [Brentin] or anyone else ha[d] done anything wrong." CP at 81. Later, Dobiash noted, and Zachry agreed, that Zachry had not followed up on this discrepancy and that it was likely due to errors in Zachry's drug logbook documentation.

[23] Zachry later admitted that Brentin had never administered such a medication because Zachry was the one responsible for its administration. Further, Zachry admitted that she had access to the records of prescribed drugs but did not check whether any had been wrongfully prescribed, and the records themselves account for the drugs Zachry claimed were illegally prescribed.

[24] Panerio's notes about the October 9 meeting did not reflect that Zachry had discussed possible OSHA violations. At her deposition, Zachry recalled discussing her personal issues but did not state that she had discussed OSHA violations with Panerio.

On October 23, 2015, Dobiash e-mailed Zachry the PIP. The performance improvement opportunities listed in the PIP were timely placement of students in externships; improvement of quantity and timeliness of clinical site evaluation visits; timely verification of job placement for recent graduates; completion of administrative duties, such as entering students' externship timesheets and ordering supplies; performance of her surgical duties as an attending veterinarian; improvement in her job attendance rate; improvement of her professional respect toward other PIMA employees; and following the protocol for reporting grievances. The PIP required Zachry to meet with Dobiash each Friday until November 20, 2015 to discuss Zachry's progress and compliance with the PIP. The PIP notified Zachry that "[l]ess than adequate improvement may result in dismissal."[25]

On November 2, 2015, Zachry e-mailed Brentin, Dobiash, and Panerio about discrepancies in the controlled drug logbook and stated that she could not track the drugs because they were not catalogued properly. Zachry requested that Brentin provide her with written copies of all Clavamox[26] and Tramadol that Zachry had previously ordered.[27]

On November 10, 2015, Hanson e-mailed Zachry to inform her that PIMA would investigate her concerns about alleged illegal activity. Hanson reiterated that Zachry was on a PIP, and that she had to attend the weekly meetings. In

---

[25] CP at 91.
[26] Clavamox is an antibiotic medication.
[27] In a later deposition, Zachry stated that when she asked Brentin for data about PIMA's Clavamox supply, Brentin told her that it had expired and was thrown away. Brentin declared that she and Dobiash inventoried the Clavamox and noticed a bottle with a July 2015 expiration date, which they removed from the cabinet and which has been kept in Brentin's office.

response, Zachry disputed the validity of the PIP. She also said that she had "no intention of following through with the items on the PIP that are either unreasonable or newly assigned duties."[28]

Zachry was unable or unwilling to comply with the PIP's requirements. On November 11, Zachry met with Dobiash and Panerio to discuss the PIP, and all three agreed that she had not complied with the PIP's requirements. Later that day, PIMA informed Zachry that her employment was being terminated immediately because she had admitted to not complying with the PIP and had stated that she had no intention of doing so in the future.

On November 30, 2015, Zachry sued PIMA, claiming that PIMA had wrongfully terminated her in violation of public policy. In her complaint, Zachry argued that she had been wrongfully terminated in retaliation for reporting drug management violations by Brentin.

On December 23, 2016, PIMA filed an amended motion for summary judgment. PIMA argued that Zachry had not established the necessary elements of her claim, and characterized her claim as whistleblowing.[29] Further, PIMA

---

[28] CP at 278.

[29] PIMA's amended motion for summary judgment was the first instance of Zachry's claim being characterized as whistleblowing. This is inaccurate.

Although Zachry filed several complaints with regulatory bodies on or before October 20, 2015, after the October 16 PIP meeting, her claim for wrongful termination in violation of public policy was not based on these complaints. Further, on appeal Zachry rejects PIMA's characterization of her claim as whistleblowing. She argues that a report to upper management of wrongdoing is sufficient to support a claim of wrongful termination in violation of public policy, relying on Rickman v. Premera Blue Cross, 184 Wn.2d 300, 305-06, 311-12, 358 P.3d 1153 (2015) (applying analysis of Gardner v. Loomis Armored, Inc., 128 Wn.2d 931, 940, 913 P.2d 377 (1996), to employee's complaint that she had been wrongfully terminated in violation of public policy after raising concerns to her supervisor that employer's practices could violate HIPAA laws (Health Insurance Portability and Accountability Act of 1996, Pub. L. No. 104-191, 110 Stat. 1936)).

contended that, even if Zachry established the elements necessary for her claim, undisputed evidence in the record demonstrated that Zachry's poor job performance and failure to comply with the PIP provided an overriding justification for PIMA's termination of her employment.

On January 3, 2017, Zachry filed a response to PIMA's amended motion for summary judgment. Zachry argued that genuine issues of material fact precluded summary judgment. She argued that firing employees in retaliation for reporting employer misconduct violated public policy, and that the record established a factual dispute about actual misconduct by PIMA "regarding (i) the management of prescription drugs, (ii) the disposal of hazardous waste, and (iii) the failure to teach federally-required coursework."[30] She also argued that there was a dispute of material fact regarding the other elements of her claim, including briefly arguing that there was a question of fact concerning whether the PIP was a pretext for retaliating against Zachry.

On January 9, 2017, PIMA filed a reply in support of its amended motion for summary judgment. PIMA argued that Zachry had failed to establish a clear public policy because whistleblowing is insufficient to establish a clear public policy, and

Thus, because Zachry's initial complaint was not premised on whistleblowing and she has explicitly rejected this characterization on appeal, we decline to reach PIMA's arguments regarding whistleblowing on appeal.

[30] CP at 354-56. Zachry's complaint did not refer to hazardous waste disposal or failure to teach federally-required coursework. The record does not indicate that Zachry filed an amended complaint or otherwise raised these arguments prior to her response to PIMA's motion for summary judgment. The parties have not clarified this discrepancy, and have addressed the merits of each new claim in their briefing and argument before the trial court. See, e.g., CP at 519-20 (PIMA reply in support of amended motion for summary judgment), Report of Proceedings (RP) (Jan. 13, 2017) at 21 (argument during hearing on PIMA's summary judgment motion). We will consider these three public policy grounds as having been raised below.

Zachry had not shown that PIMA engaged in actual misconduct in its hazardous waste disposal, failing to teach federally-required coursework, or managing controlled substances. PIMA also argued that Zachry had not produced evidence that her conduct in reporting the violations was the only way to promote the public policy or that her complaints were a substantial factor in PIMA's decision to terminate her employment. Finally, PIMA contended that it had carried its burden of showing that Zachry's job performance deficiencies were an overriding justification for her being placed on a PIP and for her later termination, and that Zachry had not disputed the evidence supporting that overriding justification.

On January 13, the trial court held a hearing on PIMA's motion for summary judgment.[31] PIMA's arguments primarily focused on whether Zachry had established a clear public policy and whether PIMA had offered an undisputed overriding justification for Zachry's termination. Zachry responded by reiterating that she had reported violations of several substantive laws, including laws governing the dispensing of controlled substances, governing hazardous waste management, and requiring facilities receiving federal funding to teach classes on constitutional principles. Zachry contended that there were triable issues of fact on all of the elements of her claim, and that the PIP was retaliatory.

On January 20, 2017, the trial court issued an order granting summary judgment in favor of PIMA and dismissing Zachry's claims with prejudice. On March 15, 2017, the trial court supplemented its order on summary judgment to

---

[31] We note that the trial court did not have all of the relevant documents before it at the summary judgment hearing, including declarations submitted by the parties. The trial court proceeded with the hearing following a request by Zachry's attorney, and stated that it would return to the pleadings after reviewing the declarations.

provide a list of the documents in the record that it had considered in making its decision.

Zachry appeals.

## ANALYSIS

### Wrongful Termination in Violation of Public Policy

Zachry argues that the trial court erred in granting summary judgment in favor of PIMA because she established a prima facie case of wrongful termination in violation of public policy and because genuine issues of material fact existed on each element of her claim. Because PIMA established an overriding justification for Zachry's termination, and Zachry fails to demonstrate that the justification was a pretext, we conclude that the trial court did not err.

Generally, Washington employment contracts that do not set a definite duration are "terminable at will by either the employee or employer." Thompson v. St. Regis Paper Co., 102 Wn.2d 219, 223, 685 P.2d 1081 (1984). But "an employer can be liable in tort if he or she discharges an employee for a reason that contravenes a clear mandate of public policy." Thompson, 102 Wn.2d at 233. This public policy exception is "narrowly drawn so that it does not swallow the general rule of at-will employment." Roe v. TeleTech Customer Care Mgmt. (Colorado) LLC, 171 Wn.2d 736, 756, 257 P.3d 586 (2011).

In determining whether an employee has made a prima facie case of wrongful termination in violation of public policy, courts consider whether the employee has proved the existence of a clear public policy (the clarity element), that discouraging the conduct he or she engaged in would jeopardize the public

policy (the jeopardy element), and that he or she was dismissed because of the conduct he or she engaged in that was related to the public policy (the causation element).[32] Becker v. Cmty. Health Sys., 184 Wn.2d 252, 259 n.3, 359 P.3d 746 (2015) (citing Gardner v. Loomis Armored, Inc., 128 Wn.2d 931, 941, 913 P.2d 377 (1996)). To establish causation, the employee must "produce evidence that the actions in furtherance of public policy were 'a cause of the firing, and [the employee] may do so by circumstantial evidence.'" Rickman v. Premera Blue Cross, 184 Wn.2d 300, 314, 358 P.3d 1153 (2015) (alteration in original) (quoting Wilmot v. Kaiser Alum. & Chem. Corp., 118 Wn.2d 46, 70, 821 P.2d 18 (1991)). "This [causation] test asks whether the employee's conduct in furthering a public policy was a "substantial" factor motivating the employer to discharge the employee." Rickman, 184 Wn 2d at 314 (quoting Wilmot, 118 Wn.2d at 71).

If the employee establishes a prima facie case of wrongful termination in violation of public policy, the burden shifts to the employer to establish a legitimate, nonpretextual, nonretaliatory overriding justification for the dismissal (the absence of justification element). Gardner, 128 Wn.2d at 941; Wilmot, 118 Wn.2d at 70. Thus, the employer must "'offer an overriding justification for the [discharge]' . . . 'despite the employee's public-policy-linked conduct.'" Rickman, 184 Wn.2d at 314 (alteration in original) (quoting Gardner, 128 Wn.2d at 941, 947).

---

[32] Several situations have been recognized as giving rise to a claim of wrongful termination in violation of public policy, including an employee's refusal to commit an illegal act or whistleblowing. Rose v. Anderson Hay & Grain Co., 184 Wn.2d 268, 276, 358 P.3d 1139 (2015). As discussed above, Zachry's claim is not premised on alleged whistleblowing practices, and thus the present case does not fall within the specified scenarios enunciated in Rose. We instead apply the analysis enunciated in Gardner, 128 Wn.2d at 941.

"If the employer produces evidence of a legitimate basis for the discharge, the burden shifts back" to the employee to establish that the employer's justification was pretextual or that retaliation for the employee's protected conduct was a substantial factor motivating the employer even if the employer's justification was valid. Wilmot, 118 Wn.2d at 70, 73.

"Summary judgment is appropriate when 'there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law.'" Locke v. City of Seattle, 162 Wn.2d 474, 483, 172 P.3d 705 (2007) (quoting CR 56(c)). "A genuine issue of material fact exists where reasonable minds could differ on the facts controlling the outcome of the litigation." Ranger Ins. Co. v. Pierce County, 164 Wn.2d 545, 552, 192 P.3d 886 (2008). "When determining whether an issue of material fact exists, the court must construe all facts and inferences in favor of the nonmoving party." Ranger Ins. Co., 164 Wn.2d at 552.

"The burden of showing that there is no issue of material fact falls upon the party moving for summary judgment." Hash by Hash v. Children's Orthopedic Hosp. & Med. Ctr., 110 Wn.2d 912, 915, 757 P.2d 507 (1988). Once the moving party carries its burden, "the burden shift[s] to the nonmoving party to set forth facts showing that there is a genuine issue of material fact." Hash by Hash, 110 Wn.2d at 915. "Broad generalizations and vague conclusions are insufficient to resist a motion for summary judgment." Thompson v. Everett Clinic, 71 Wn. App. 548, 555, 860 P.2d 1054 (1993).

A trial court's grant of summary judgment is reviewed de novo. Ranger Ins. Co., 164 Wn.2d at 552.

Here, Zachry's arguments on appeal almost exclusively focus on whether hazardous waste laws, laws regulating drug management, and institutions that receive federal funding teaching about the United States Constitution on Constitution Day are clearly established public policies.[33]  She has not offered substantial argument on the causation or justification elements of her prima facie claim of wrongful termination in violation of public policy.  But even assuming that Zachry was able to establish that a genuine issue of material fact exists on the clarity, causation, or jeopardy elements of her claim, she has not shown that a genuine issue of material fact exists regarding PIMA's overriding justification for terminating her employment.

Zachry exhibited issues with her job performance and interactions with other PIMA employees as early as April 2015.  Her job performance problems continued through August and September 2015, and her interactions with others became increasingly hostile.

These issues prompted PIMA to place Zachry on a PIP in October 2015.  The PIP focused on improving her performance of core job duties, such as timely placement of students into externships and improving the quality and timeliness of clinical site evaluation visits, and her relations with other employees.  The PIP notified Zachry that she could be terminated if she did not show adequate improvement.  On November 11, 2015, Zachry agreed that she had not complied

_____

[33] Zachry also argues for the first time on appeal that she was wrongfully terminated in violation of public policies based on her complaints about OSHA violations at PIMA.  A reviewing court may decline to review any issue that a party did not raise before the trial court on summary judgment.  RAP 9.12.  We decline to reach Zachry's arguments concerning her alleged complaints of OSHA violations.

with any of the PIP's required areas of improvement, and PIMA terminated her on the same day.

The PIP's required areas of improvement were related to critical aspects of Zachry's job and her ability to work effectively with other PIMA employees. Zachry was aware that her failure to improve in these areas could lead to the termination of her employment. But she admittedly failed to comply with the PIP. Thus, Zachry's failure to comply constitutes an overriding justification for her termination.

On appeal, Zachry has not argued that she complied with the PIP or that a genuine issue of material fact precluding summary judgment existed on the element of PIMA's overriding justification for her termination. Therefore, we conclude that PIMA carried its burden of establishing that no genuine issue of material fact existed on whether it had established an overriding justification for Zachry's termination.

Zachry contends that she has met her burden to show that the PIP was pretextual or retaliatory, and thus cannot serve as a valid overriding justification for her termination. Specifically, she describes the PIP as "onerous" and "one with which she could not possibly comply," and claims that it added new duties.[34] Zachry did not raise this argument on summary judgment below and it is therefore untimely.[35] We decline to reach Zachry's challenge to the validity of the PIP or its contents. RAP 9.12.

---

[34] Appellant's Br. at 37.
[35] See CP at 1-4 (Zachry's complaint did not mention the PIP as a retaliatory action); CP at 358-59 (Zachry's response to PIMA's motion for summary judgment, arguing that the timing of the PIP indicated it was retaliatory).

We also note that, even taking Zachry's argument as true, she only challenged some areas of improvement listed in the PIP in an e-mail to Hanson. In the same e-mail, Zachry wrote that "the rest of the PIP besides these specific details will be adhered to strictly without difficulty."[36]

Later, Zachry acknowledged that she did not comply with any of the PIP's areas of improvement, including those which she agreed were valid. Thus, because she admitted that she failed to improve her job performance in accordance with unchallenged aspects of the PIP, her argument does not create a genuine issue of material fact over whether PIMA offered an overriding justification for her termination.

Zachry also argues that the timing of PIMA's placing her on a PIP indicated that the PIP was retaliatory.

"[I]n establishing [a prima facie case of wrongful termination], '[p]roximity in time between the claim and the firing is a typical beginning point, coupled with evidence of satisfactory work performance and supervisory evaluations.'" Wilmot, 118 Wn.2d at 69 (third alteration in original) (quoting 1 L. Larson, Unjust Dismissal § 6.05[5], at 6-51).

As discussed above, Zachry acknowledged that she did not comply with any of the PIP's areas of improvement, including those she did not challenge as invalid. Thus, although Zachry's termination was arguably close in time to her complaints, it was not accompanied by satisfactory job performance. Therefore,

---

[36] CP at 278.

we conclude that temporal proximity is insufficient to demonstrate that the PIP was retaliatory.

In sum, Zachry has not demonstrated that a genuine issue of material fact precluding summary judgment existed regarding PIMA's legitimate, nonpretextual, nonretaliatory overriding justification for her termination. Therefore, we conclude that the trial court did not err in granting summary judgment in favor of PIMA and dismissing Zachry's case with prejudice.

Affirmed.

Trickey, J

WE CONCUR:

FILED
COURT OF APPEALS DIV I
STATE OF WASHINGTON
2018 SEP -4  AM 9: 33