# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| ERICA M. RICKMAN, | ) | |
| | ) | DIVISION ONE |
| Appellant, | ) | |
| | ) | No. 70766-3-I |
| v. | ) | |
| | ) | |
| PREMERA BLUE CROSS, | ) | UNPUBLISHED OPINION |
| | ) | |
| Respondent. | ) | FILED: May 9, 2016 |
| | ) | |

DWYER, J. — On remand from our Supreme Court, we again consider

whether Erica Rickman stated a claim for wrongful termination in violation of

public policy sufficient to overcome a motion for summary judgment. Because

Rickman established a prima facie case that she was wrongfully terminated as a

result of protected activity and because Premera does not offer an overriding

justification for that termination but, instead, asserts that she was discharged for

a different reason altogether, Rickman is entitled to have her claim decided by a

jury. Accordingly, we hold that dismissal on summary judgment was improper

and remand for further proceedings.

I

The facts pertinent to this dispute were set forth in our first opinion,

Rickman v. Premera Blue Cross, noted at 183 Wn. App. 1015 (2014)

(unpublished), and the Supreme Court's opinion, 184 Wn.2d 300, 358 P.3d 1153 (2015), and will be referred to herein only as necessary.

After we issued our prior opinion, the Supreme Court granted review of this case and two other cases in order to comprehensively examine the "adequacy of alternative remedies" component of the jeopardy element of the wrongful discharge tort. In the resulting opinions, the court changed course and held that alternative statutory remedies to a wrongful termination action are to be analyzed for whether they were meant to be the *exclusive* remedy, rather than whether they were intended to provide an *alternative* remedy. Becker v. Cmty. Health Sys., Inc., 184 Wn.2d 252, 359 P.3d 746 (2015); Rose v. Anderson Hay and Grain Co., 184 Wn.2d 268, 358 P.3d 1139 (2015); Rickman, 184 Wn.2d 300.

With regard to this case, the court determined that, applying the clarified standard, nothing in Premera's internal reporting system, nor in HIPAA[1] or its Washington counterpart, UHCIA,[2] precluded Rickman's claim of wrongful discharge. Rickman, 184 Wn.2d at 304. Accordingly, the court reversed our decision affirming the trial court's summary judgment dismissal of Rickman's claim. It also remanded the case to us for further determination.

The Supreme Court's opinion included three somewhat different formulations of its directive on remand. At various points, the majority opinion stated:

- "We . . . remand for [the Court of Appeals] to address Premera's alternate argument for upholding the trial court's order of dismissal." Rickman, 184 Wn.2d at 304.

---

[1] Health Insurance Portability and Accountability Act of 1996. Pub. L. No. 104-191, 110 Stat. 1936.
[2] Uniform Health Care Information Act, ch. 70.02 RCW.

- "We . . . remand to the Court of Appeals to consider [the] alternate ground for the trial court's order of dismissal." Rickman, 184 Wn.2d at 314.

- "We remand for the Court of Appeals to address whether the trial court's order of summary judgment should be affirmed on the alternate ground that Premera met its burden of proof that it had an 'overriding justification' for Rickman's discharge." Rickman, 184 Wn.2d at 315.

Notwithstanding the differences between these formulations, we understand our mandate to be to determine whether there are additional bases, promoted by either the trial court or Premera, for affirming the trial court's summary judgment order.

II

Rickman contends that the trial court improperly granted summary judgment dismissal of her wrongful termination claim against Premera. This is so, she asserts, because there is a genuine issue of material fact as to the cause of her termination. She is correct.

We review a trial court's grant of summary judgment de novo. Camicia v. Howard S. Wright Constr. Co., 179 Wn.2d 684, 693, 317 P.3d 987 (2014). Summary judgment is appropriate only when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. CR 56(c); Camicia, 179 Wn.2d at 693. When making this determination, we consider all facts and make all reasonable, factual inferences in the light most favorable to the nonmoving party. Young v. Key Pharms., Inc., 112 Wn.2d 216, 226, 770 P.2d 182 (1989).

As the court summarized in Becker,

The tort for wrongful discharge in violation of public policy is a narrow exception to the at-will doctrine. It is recognized as a

-3-

means of encouraging employees to follow the law and preventing employers from using the at-will doctrine to subvert those efforts to promote public policy. To state a cause of action, the plaintiff must plead and prove that his or her termination was motivated by reasons that contravene an important mandate of public policy. . . . Once established . . . the employer [must] plead and prove that the employee's termination was motivated by other, legitimate, reasons. Thompson v. St. Regis Paper Co., 102 Wn.2d 219, 232-33, 685 P.2d 1081 (1984).

Because we construe this tort exception narrowly, wrongful discharge claims have generally been limited to four scenarios:

> (1) where employees are fired for refusing to commit an illegal act; (2) where employees are fired for performing a public duty or obligation, such as serving jury duty; (3) where employees are fired for exercising a legal right or privilege, such as filing workers' compensation claims; and (4) where employees are fired in retaliation for reporting employer misconduct, i.e., whistleblowing.

Gardner v. Loomis Armored, Inc., 128 Wn.2d 931, 936, 913 P.2d 377 (1996) (citing Dicomes v. State, 113 Wn.2d 612, 618, 782 P.2d 1002 (1989)). When the plaintiff's case does not fit neatly within one of these scenarios, a more refined analysis may be necessary, and the four-factor Perritt analysis may provide helpful guidance. Gardner, 128 Wn.2d at 941 (citing HENRY H. PERRITT, JR., WORKPLACE TORTS: RIGHTS AND LIABILITIES § 3.7 (1991)).[3]

184 Wn.2d at 258-59.

Under Washington's adoption of the Perritt analysis, courts examine

> (1) the existence of a "clear public policy" (clarity element), (2) whether "discouraging the conduct in which [the employee] engaged would jeopardize the public policy" (jeopardy element), (3) whether the "public-policy-linked conduct caused the dismissal" (causation element), and (4) whether the employer is "able to offer an overriding justification for the dismissal" (absence of justification element).

Becker, 184 Wn.2d at 259 n.3 (alteration in original) (quoting Gardner, 128

Wn.2d at 941).

---

[3] As the dissenting opinion in the Supreme Court pointed out, the majority's use of the Perritt analysis herein was puzzling, given that the case involves whistleblowing activity, one of the four standard scenarios for which the Perritt analysis is supposed to be unnecessary. Rickman, 184 Wn.2d at 319 (Fairhurst, J., concurring).

The proper order and nature of proof for claims falling into one of the four standard scenarios is well established. We apply the three-step, burden-shifting test from <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973). The first step is for a plaintiff to make out a prima facie case for retaliatory discharge. To do so, a plaintiff must show that protected activity was "a cause" of his or her termination. <u>Wilmot v. Kaiser Alum. & Chem. Corp.</u>, 118 Wn.2d 46, 70, 821 P.2d 18 (1991). As the Supreme Court emphasized in its opinion in this case:

> [C]ausation in a wrongful discharge claim is not an all or nothing proposition. The employee "need not attempt to prove the employer's sole motivation was retaliation." <u>Wilmot</u>, 118 Wn.2d at 70. Instead, the employee must produce evidence that the actions in furtherance of public policy were "a cause of the firing, and [the employee] may do so by circumstantial evidence." <u>Id.</u> This test asks whether the employee's conduct in furthering a public policy was a "'substantial'" factor motivating the employer to discharge the employee. <u>Id.</u> at 71.

<u>Rickman</u>, 184 Wn.2d at 314 (second alteration in original).

If the plaintiff presents a prima facie case, the burden of production shifts to the employer to "articulate a legitimate nonpretextual nonretaliatory reason for the discharge." <u>Wilmot</u>, 118 Wn.2d at 70. If the employer meets this burden, the third component of the test requires the plaintiff to produce sufficient evidence that the employer's alleged nonretaliatory reason for the employment action was pretextual. <u>Wilmot</u>, 118 Wn.2d at 70; <u>accord</u> <u>Scrivener v. Clark Coll.</u>, 181 Wn.2d 439, 446, 334 P.3d 541 (2014) (applying the <u>McDonnell Douglas</u> framework in the employment discrimination context).

Employees may satisfy the pretext prong of the <u>McDonnell Douglas</u> framework, and overcome a motion for summary judgment, by offering sufficient evidence to create a genuine issue of material fact either (1) that the employer's articulated reason for its action is pretextual, or (2) that, although the employer's stated reason is legitimate, retaliation for protected conduct nevertheless was a substantial factor motivating the employer. <u>Wilmot</u>, 118 Wn.2d at 73; <u>accord</u> <u>Scrivener</u>, 181 Wn.2d at 441-42, 446. For summary judgment purposes, this is a burden of production, not persuasion. <u>See</u> <u>Scrivener</u>, 181 Wn.2d at 445, 447.

"Once a plaintiff presents a prima facie case of wrongful discharge in violation of public policy, the burden of proof shifts to the employer to show the termination was justified by an overriding consideration." <u>Rickman</u>, 184 Wn.2d at 314 (citing <u>Gardner</u>, 128 Wn.2d at 947-50).

The "'absence of justification,'" or "'overriding justification,'" element examines whether, "'despite the employee's public-policy-linked conduct,'" "the employer can 'offer an overriding justification for the [discharge].'" <u>Rickman</u>, 184 Wn.2d at 314 (alteration in original) (quoting <u>Gardner</u>, 128 Wn.2d at 941, 947). The inquiry presupposes that an employee was fired for public policy-linked conduct; in other words, it applies only when the causation element is not in dispute. Whether an employer has presented an overriding justification for a termination is a question of law for the court. <u>See</u> <u>Gardner</u>, 128 Wn.2d at 942 ("[T]he overriding justification element enables *this court* to weigh properly [the employer's] argument, which claims [its] workplace rule should trump any public policies furthered by [the employee]'s actions." (emphasis added)).

Only in Gardner, 178 Wn.2d 931, has our Supreme Court comprehensively addressed the overriding justification element. That case involved an employee who was fired after he left his employer's armored car unattended while he attempted to intervene to assist a woman who was being chased by an armed assailant. The defendant-employer therein admitted that the plaintiff-employee had been terminated as a result of the specified public policy-linked conduct but contended that the employee's wrongful termination claim nevertheless failed because it had an overriding justification for the termination. The termination was justified, the employer asserted, because the employee's conduct violated a rule prohibiting employees from leaving its armored cars unattended, which promoted worker safety and protected the contents of the armored cars. The Supreme Court adopted the overriding justification element from the Perritt analysis, stating, "some public policies, even if clearly mandated, are not strong enough to warrant interfering with employers' personnel management." Gardner, 128 Wn.2d at 947. In Gardner, however, the court concluded that the employer's legitimate interest in protecting the safety of its workers did not override the public policy in favor of assisting others in life threatening situations. 128 Wn.2d at 949.[4]

Unlike the employer in Gardner, Premera does not concede that it terminated Rickman for any public policy-linked conduct. In fact, Premera denies that Rickman's health insurance privacy concerns had anything to do with its decision to terminate her. Instead, Premera alleges that it terminated Rickman

---

[4] By contrast, if the public policy at issue had merely been the "broad good samaritan doctrine," that public policy would not have overridden "an employer's legitimate interest in workplace rules." Gardner, 128 Wn.2d at 949.

-7-

for "poor judgment" and "lack of integrity," which were uncovered during an investigation into allegations that she violated its "conflict of interest" policy. Thus, Premera's defense does not implicate the overriding justification element.

Despite this, the trial court's order on summary judgment apparently was based in part on a perceived absence of proof relative to that element. The trial court's letter ruling stated, in pertinent part:

> Absence of Justification. Finally, there is no genuine issue of material fact that Ms. Ferrara's termination recommendation was made without knowledge of the risk bucketing/HIPAA compliance issue. Thus, Plaintiff is unable to meet her burden of production on the last element of the wrongful discharge in violation of public policy claim: the absence of justification element.
>
> To the extent Plaintiff asserts that the timing of her discharge presents circumstantial evidence that her discharge was a pretext for the HIPAA issue spotting matter, this argument fails. A motion for summary judgment may not be defeated by mere allegations.

The substantive focus of this aspect of the trial court's ruling was the true motivation for Premera's decision to terminate Rickman. Thus, as the parties agree, although the trial court framed its ruling in terms of the absence of justification element, substantively, the ruling was actually based on the causation element.[5] Accordingly, the relevant legal issue herein is causation and the relevant question is whether Rickman established a genuine issue of material fact regarding whether her public policy-related conduct (expressing her HIPAA concerns) was a substantial cause of her termination.

Rickman established a prima facie case of wrongful termination by producing evidence that she was terminated soon after she had raised concerns

---

[5] The Supreme Court noted that reasoning like the trial court's "blend[s] the separate issues of causation and overriding justification, as it focuses on whether Rickman's HIPAA concerns were the real reason for her termination." Rickman, 184 Wn.2d at 314.

that the plan proposed by her supervisor, Rick Grover, to deal with an upcoming merger might violate HIPAA. In response, Premera produced evidence that Rickman was actually terminated as a result of an internal investigation into a potential conflict of interest involving Rickman and her son, which was conducted by Nancy Ferrara.

Rickman then proffered significant evidence to support a finding that either (1) Premera's articulated reason for terminating her was pretextual, or (2) although Premera's stated reason was legitimate, retaliation was nevertheless a substantial factor motivating its decision. Specifically, Rickman presented six points that undercut Premera's contention that her termination was unrelated to her HIPAA concerns: (1) the temporal proximity between Rickman raising her concerns and her termination, (2) the "specious" nature of the employee complaint that spurred the conflict of interest investigation, (3) Rickman's openness regarding her connection to her son, (4) Premera's inconsistent reasons for terminating her employment, (5) Premera's inconsistent positions regarding the legality of the practice about which Rickman expressed concerns, and (6) Grover's "suspect" concerns regarding her business capabilities. Thus, Rickman presented sufficient evidence that Premera's proffered explanation for her termination was pretextual.[6]

The trial court did not address the evidence that Rickman presented in this regard but, instead, based its ruling on the fact that Ferrara was not aware of

---

[6] Our conclusion is consistent with the statement in the Rickman majority opinion that "Rickman presented sufficient evidence to create a genuine issue of material fact on the prima facie elements of her claim." 184 Wn.2d at 315. We have nevertheless addressed the merits of Premera's contention that Rickman presented insufficient evidence of causation to withstand its motion for summary judgment for the sake of clarity and completeness.

Rickman's HIPAA concerns when she recommended that Rickman be terminated. However, this fact is not the fatal flaw that the trial court perceived it to be. It is undisputed that Grover, not Ferrara, made the final decision to terminate Rickman. Moreover, whereas Ferrara may have been unaware of Rickman's HIPAA concerns, Grover was the person to whom she directly expressed those concerns. Therefore, the fact that Rickman's expressed HIPAA concerns did not factor into Ferrara's recommendation does not foreclose the possibility that a jury could conclude that they contributed to Grover's decision.

The second basis for the trial court's causation ruling was that Rickman could not solely rely on evidence of proximity in time between her expressed HIPAA concerns and her termination to create an issue of fact. While it is true that temporal proximity alone is not generally sufficient to satisfy an employee's burden under the McDonnell Douglas pretext prong, it may nevertheless be an important part of the employee's proof. Wilmot, 118 Wn.2d at 69. More to the point, Rickman did not rely on temporal proximity alone. To the contrary, she presented significant other evidence supporting her argument that the conflict of interest controversy was a pretextual reason for her termination.

In short, both Rickman and Premera met their preliminary evidentiary burdens and the record contains reasonable, but competing, inferences from which a jury could decide either that Rickman was wrongfully terminated or that she was terminated for a legitimate, nonretaliatory reason. Rickman's claim thus presents a question for the jury. See Scrivener, 181 Wn.2d at 445 ("When the

record contains reasonable but competing inferences of both discrimination and nondiscrimination, the trier of fact must determine the true motivation.").

Reversed and remanded for further proceedings consistent with this opinion.

We concur: